**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAHMOUD KHALIL AND THE CENTER FOR CONSTITUTIONAL RIGHTS,

*Plaintiffs,*

v.

UNITED STATES EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF LEGAL COUNSEL, UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF INFORMATION POLICY, UNITED STATES DEPARTMENT OF JUSTICE CRIMINAL DIVISION, UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION, UNITED STATES DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION, UNITED STATES DEPARTMENT OF JUSTICE EXECUTIVE OFFICE OF U.S. ATTORNEYS, AND UNITED STATES DEPARTMENT OF JUSTICE NATIONAL SECURITY DIVISION,

*Defendants.*

Civil Action No.: 26-cv-10119

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiffs Mahmoud Khalil and the Center for Constitutional Rights ("CCR") (hereinafter collectively, "the Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a *et seq.*, seeking declaratory, injunctive, and other appropriate relief to compel the release of agency records improperly withheld by Defendants United States Executive Office For Immigration Review ("EOIR"), United States Department Of Justice ("DOJ"), the DOJ's Office Of Legal Counsel ("DOJ-OLC"), DOJ's Office Of Information Policy ("DOJ-OIP"), DOJ Criminal Division ("DOJ-

Criminal"), DOJ Civil Division ("DOJ-Civil"), DOJ Civil Rights Division ("DOJ-CRT"), DOJ Executive Office Of U.S. Attorneys ("DOJ-EOA"), and the DOJ National Security Division ("DOJ-NSD"), as well as offices and components within all Defendants, including but not limited to: the Board of Immigration Appeals ("BIA"); the Office of the Chief Immigration Judge ("OCIJ"), and its component immigration courts and personnel; the U.S. Attorney's Offices for the Southern District of New York, District of New Jersey, and Louisiana; and any other appropriate components, field offices, or other parts of the Department of Justice which hold responsive records to Plaintiffs' FOIA/PA request.

2. On May 8, 2026, Plaintiffs submitted a FOIA/PA request to Defendants seeking records concerning information relating to undue influence and interference with the processing and adjudication of Plaintiff Khalil's removal proceedings, both before the Immigration Judge ("IJ") and the BIA. *See* Exhibit A, Plaintiffs' FOIA/PA Request (hereinafter "FOIA Request").

3. The purpose of Plaintiffs' request was to uncover records which would show whether anyone other than the IJ who adjudicated Mr. Khalil's removal proceedings played a role in shaping the adjudication of his case, and if so, what the content and scope of such influence and interference has been. Plaintiffs seek records that would show any influence by government officials or others—including but not limited to officials within the Office of the Attorney General, the DOJ Civil Division, and the BIA—on the decisions of the IJ who oversaw Mr. Khalil's removal proceedings before the LaSalle Immigration Court in Jena, Louisiana, and on decisions by the BIA.

4. The question of whether any other individuals, including DOJ officials, were directly involved in the decision-making or potentially drafting of oral and written decisions issued by the IJ and BIA in the course of Mr. Khalil's removal proceedings is of vital public interest and importance. Such undue influence and interference are direct violations of the clear regulatory duty

to decide cases independently and impartially, and Mr. Khalil's due process, statutory, and regulatory rights to a neutral and independent adjudicator.

5. To address the Plaintiffs' and the public's urgent need for such critical information, Plaintiffs sought records primarily relating to communications between a number of specific DOJ officials and government offices and agencies and others. *See* FOIA Request. Not only Mr. Khalil, but the public – most specifically noncitizens appearing in immigration courts and on appeal before the BIA across the country, as well as their families and advocates – have a compelling and immediate interest in whether and to what extent undue influence is being exerted by the executive branch and others on the immigration court system. Mr. Khalil's case is one of the most high-profile examples of alleged bias in the adjudicatory process of removal proceedings.[1] Allegations that Mr. Khalil's proceedings were affected by bias and improper influence – referring to records that Defendants have failed to disclose – have already made national headlines. The BIA has denied these allegations in a published decision criticizing the press without disclosing any records by which to assess its assertions.[2] Meanwhile, reports of systemic bias throughout the immigration court system—including undue influence exerted on IJs in other cases—have continued to surface,

[1] "Justice Department Rushes to Deport Palestinian Activist Mahmoud Khalil," *Democracy Now* (May 11, 2026), https://www.democracynow.org/2026/5/11/headlines/justice_department_rushes_to_deport_palestinian_activist_mahmoud_khalil; "Mahmoud Khalil calls for deportation to be halted in light of new evidence," AlJazeera (May 15, 2026), https://www.aljazeera.com/news/2026/5/15/mahmoud-khalil-calls-for-deportation-to-be-halted-in-light-of-newevidence; "Mahmoud Khalil's lawyer calls immigration case a 'sham' after revelation it was fast-tracked by DoJ," *The Guardian* (May 11, 2026), https://www.theguardian.com/us-news/2026/may/11/mahmoud-khalil-doj-case-fasttracked.

[2] *See Matter of M-K-*, 30 I&N Dec. 84 (BIA 2026); "Mahmoud Khalil Hurtles Toward Potential Deportation as U.S. Speeds Case," *NY Times* (May 8, 2026), https://www.nytimes.com/2026/05/08/nyregion/mahmoud-khalil-deportation-case.html.

prompting Congressional inquiry into undue pressure exerted on IJs and the BIA by the current administration.[3]

6. Defendants have unjustifiably failed to produce information or make a determination on the records requested by Plaintiffs. To vindicate Plaintiffs' and the public's statutory right to the information sought, Plaintiffs seek declaratory, injunctive, and other appropriate relief to compel the agency to immediately process Plaintiffs' Request and release records that they have unlawfully withheld.

**JURISDICTION AND VENUE**

7. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

8. Venue lies in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a), as Plaintiff CCR resides in this district.

**PARTIES**

9. Plaintiff Mahmoud Khalil is a thirty-one-year-old Palestinian who is married to a U.S. citizen, with whom he shares a one-year-old U.S. citizen son. Mr. Khalil is one of a number of international students who have been targeted by a government policy to retaliate – through immigration detention and deportation – against students and scholars protesting U.S. complicity

---

[3] *See* Letter from Judy Chu, Member of Cong., et al., to Markwayne Mullin, Sec'y, U.S. Dep't of Homeland Sec., Todd Blanche, Att'y Gen., U.S. Dep't of Just., & Sirce E. Owen, Acting Dir., Exec. Off. for Immigr. Rev. (Oct. 9, 2026), https://chu.house.gov/sites/evo-subsites/chu-evo.house.gov/files/evo-media-document/letter-to-trump-administration-on-immigration-bond-denials.pdf [https://perma.cc/8F5Q-MABC]; "Trump's DOJ told a judge how to rule. Then it pulled her from court," *Washington Post* (Oct. 25, 2026), https://www.washingtonpost.com/nation/2026/10/25/how-respected-us-immigration-judge-lost-her-job-under-trump/.

in Israel's ongoing assault on Gaza, in order to suppress political viewpoints that the government disfavors in the United States.

10. Plaintiff CCR is a non-profit, public interest legal and advocacy organization headquartered in New York City, New York. CCR engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, ccrjustice.org, which addresses the issues on which CCR works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, CCR regularly issues press releases, has an active social media presence with tens of thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

11. Defendant DOJ is a department of the Executive Branch of the United States. Defendants DOJ-OLC, DOJ-OIP, DOJ-NSD, DOJ Civil Division, DOJ Criminal Division, DOJ Executive Office of U.S. Attorneys, and DOJ Civil Rights Division are all components within the DOJ, and were sent copies of Plaintiffs' FOIA request either directly or via referral from another component of DOJ. DOJ and its offices have possession, custody, and control of the records that Plaintiffs seek.

12. Defendant EOIR is a component of the DOJ. Offices and sub-agencies within EOIR include the BIA, OCIJ, and its component immigration courts. EOIR and its components and offices have possession, custody, and control of the records that Plaintiffs seek.

13. All Defendants are "agencies" within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

14. Mahmoud Khalil is a thirty-one-year-old Palestinian who is married to a U.S. citizen, with whom he shares a one-year-old U.S. citizen son. Mr. Khalil applied for and received lawful permanent residency in 2024 based on his marriage to his U.S. citizen wife. Despite Mr. Khalil having no criminal history anywhere in the world, on March 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers arrested and detained him, then transferred him from New York to a remote immigration jail in Jena, Louisiana, where he remained detained for 104 days until a federal judge ordered his release. Mr. Khalil is one of a number of individuals who have been targeted by a government policy to retaliate – through immigration detention and deportation – against students and scholars protesting Israel's ongoing genocide in Gaza and U.S. complicity in that genocide. The government has pursued this unconstitutional policy in order to censor the protected expression of political viewpoints it disfavors, by both citizens and noncitizens, throughout the United States.[4] Evidence later revealed that high-level officials in the White House, the U.S. Department of State, the DOJ, and the U.S. Department of Homeland Security ("DHS"), were involved in the investigation, targeting, and decision making to pursue the detention and removal of Mr. Khalil.[5]

15. Following his detention, Mr. Khalil was placed in removal proceedings at the LaSalle Immigration Court in Jena, Louisiana, where his case was assigned to Assistant Chief Immigration Judge ("ACIJ") Jamee E. Comans. On information and belief, when Mr. Khalil arrived at the Central Louisiana ICE Processing Center ("CLIPC") where he was detained, he was

[4] *See, e.g.*, *Am. Ass'n of Univ. Professors v. Rubio ("AAUP")*, 802 F. Supp. 3d 120, 187 (D. Mass. 2025), *appeal pending* No. 26-1141 (1st Cir.); *Stanford Daily Publ'g Corp. v. Rubio*, No. 25-CV-06618-NW, 2026 WL 2549090, at *32 (N.D. Cal. Aug. 28, 2026).
[5] *See, e.g.*, *AAUP*, 802 F. Supp. 3d at 138-146 (D. Mass. 2025); *Khalil v. Joyce*, Case No. 2:25-cv-01963-MEF, Dkt. 382 (Fourth Amended Complaint) ¶¶ 42-55.

the sole case on IJ Comans's docket at the LaSalle Immigration Court. In his removal proceedings, DHS asserts that Mr. Khalil is removable because of a determination by Secretary of State Marco Rubio (the "Rubio Determination") that he has "reasonable grounds to believe that Khalil's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States," purporting that the Determination satisfied 8 U.S.C. § 1227(a)(4)(C) (hereinafter referred to as the "foreign policy ground" or "FPG"). After Mr. Khalil filed a lawsuit in federal court challenging the Rubio Determination, DHS added a second charge ("the post-hoc charge") asserting that Mr. Khalil had misrepresented material information on his application for lawful permanent resident status, *see* 8 U.S.C. § 1227(a)(1)(A), a charge which he also challenged as baseless and as unconstitutional retaliation pursuant to the government's censorship policy.

16. Throughout the course of Mr. Khalil's removal proceedings, IJ Comans issued several oral and written decisions regarding removability and relief. The speed and nature of several of these decisions were extremely unusual.

17. On April 11, 2025, approximately forty-eight hours after DHS filed the determination by Secretary Rubio in immigration court, the IJ orally delivered what appeared to be a pre-written decision finding Mr. Khalil removable as a result of the Rubio Determination. Mr. Khalil subsequently submitted applications for relief from removal in immigration court.

18. On May 22, 2025, Mr. Khalil appeared at his Individual Calendar Hearing before IJ Comans. At that hearing, the IJ denied DHS's motion to pretermit Mr. Khalil's relief application (a Form I-589, Application for Asylum and for Withholding of Removal), in which DHS asserted he is a threat to national security on the basis of the Rubio Determination. The IJ found on May 22 that Mr. Khalil was not statutorily barred from asylum, and denied his request for a continuance to gather evidence as to why the bar did not apply. The manner in which the IJ conducted the May

22 hearing was once again highly unusual. Although Mr. Khalil's hearing was scheduled on the EOIR Courts & Appeals System ("ECAS") to last only two hours, the IJ insisted that the hearing would be finished that day. After counsel for Mr. Khalil informed the IJ that they had a client meeting with Mr. Khalil that afternoon which had been ordered by the District Court, the IJ refused to recognize the court-ordered meeting and told counsel for Mr. Khalil, "I'm finishing this case today."[6] The IJ proceeded to conduct a full-day hearing, which is extremely unusual in immigration proceedings.

19. On June 11, 2025, Judge Michael Farbiarz of the District of New Jersey issued a preliminary injunction in *Khalil v. Trump*, Case No. 2:25-cv-01963-MEF, Dkt. 299, *as clarified by* Dkt. 355 (D.N.J.),[7] barring DHS and EOIR from seeking to detain or remove Mr. Khalil based on the Rubio Determination. Nevertheless, on June 20, the IJ issued a written decision (1) memorializing her April 11 oral finding of removability on the FPG charge; (2) finding Mr. Khalil removable under the post hoc charge that he misrepresented information on his adjustment of status application; and (3) denying Mr. Khalil asylum, withholding of removal, and protection under the Convention Against Torture. The IJ did not address Mr. Khalil's request for a waiver of the alleged misrepresentation charge. The IJ also issued an order denying Mr. Khalil the

---

[6] This was not the only time the IJ defied a District Court order.

[7] On January 15, 2026, the U.S. Court of Appeals for the Third Circuit overruled the district court's order in a split panel decision on jurisdictional grounds. *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026). The District Court orders enjoining reliance on the FPG and Rubio Determination remain in effect, because the U.S. Court of Appeals for the Third Circuit has not issued its mandate pursuant to Federal Rule of Appellate Procedure 41. In fact, the Third Circuit has stayed the issuance of its mandate pending the disposition of a petition for certiorari to the U.S. Supreme Court. Mr. Khalil filed his Petition for a Writ of Certiorari on October 19, 2026. *Khalil v. Trump*, Case No. 25-2162, Dkt. 171 (3d Cir. Sept. 22, 2026); *see also Khalil v. Trump*, No. 26A90. Accordingly, the mandate for the Third Circuit has not issued and the district court's orders remain in effect. *See, e.g.*, Fed. R. App. P. 41(c) ("[t]he mandate is effective when issued"); *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988) ("[a]n appellate court's decision is not final until its mandate issues.").

opportunity to receive a bond hearing on the basis of the enjoined Rubio Determination. Mr. Khalil submitted a motion to reconsider the IJ's June 20 written decision on removability and relief, as it directly violated the District Court's injunction, but the IJ denied this motion without analysis on July 3.

20. On July 17, Judge Farbiarz clarified for the IJ the terms of his June 11 injunction. The IJ then reopened proceedings on July 18 for the purpose of considering Mr. Khalil's waiver request. In light of the District Court's clarification, the IJ issued an order on July 31 vacating her finding of removability under the foreign policy ground. This July 31 decision also contained a highly unusual footnote criticizing the federal District Court order.

21. Then, on September 12, the IJ issued an amended decision denying Mr. Khalil's waiver request, without holding a hearing, and again ordering him removed. Notably, in that decision, the IJ declined to follow then-binding BIA caselaw in *Matter of Agour*, 26 I&N Dec. 566 (BIA 2015), holding that Mr. Khalil was eligible for the waiver he sought, instead writing a decision suggesting that *Matter of Agou*r should be overruled. This is highly unusual, given that IJs are bound by regulation to follow BIA precedent.[8] On February 26, 2026—four days before Mr. Khalil's opening brief on appeal was due—the BIA issued a published decision in another matter overruling its prior precedent in *Matter of Agour* regarding eligibility for the waiver and adopting the reasoning in IJ Comans' decision. *See Matter of Forjoe*, 29 I&N Dec. 463 (BIA 2026).

22. Shortly after issuing the removal order in Mr. Khalil's case, in December 2025, IJ

[8] *See* 8 C.F.R. § 1003.1(g) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").

Comans was promoted to Acting Director of the Office of Policy at EOIR.[9] In stark contrast, IJs who ordered the termination of removal proceedings of other noncitizens targeted in retaliation for pro-Palestine speech and activity—including Mohsen Mahdawi and Rumeysa Ozturk—were fired by EOIR and removed from their position as IJs.[10]

23. Mr. Khalil appealed the IJ's decisions to the BIA, which addressed his appeal on an extraordinarily expedited schedule for a non-detained case.[11] The BIA first issued a briefing schedule on October 22, 2025, eight business days after Mr. Khalil filed his appeal. The speed in which this briefing schedule was issued was exceedingly fast, particularly for a non-detained case like Mr. Khalil's.[12] Mr. Khalil subsequently jointly agreed with the federal respondents in his habeas proceedings to stay both BIA proceedings and discovery before the District Court until the Third Circuit Court of Appeals' panel issued its decision in the government's appeal of Judge Farbiarz's injunction and bail order, and agreed that Mr. Khalil's opening brief at the BIA would be submitted forty-five days after the panel decision.

---

[9] *See* "Assistant Director - Jamee E. Comans," EOIR, https://www.justice.gov/eoir/staff-profile/office-policy-acting-assistant-director. In November 2026, Director Comans was again promoted— to Chief Immigration Judge of EOIR. *See* "DOJ Taps New Top Immigration Judge to Manage Deportation Agenda," *Bloomberg Law News* (Nov. 17, 2026), https://news.bloomberglaw.com/us-law-week/doj-taps-new-top-immigration-judge-to-manage-deportation-agenda.

[10] *See* "Judges Fired After Blocking Deportations of Pro-Palestinian Students," *NY Times* (Apr. 11, 2026), https://www.nytimes.com/2026/04/11/us/politics/immigration-judges-deportations-students.html.

[11] *See* Exhibit C, Declaration of Zabdi J. Salazar (showing that as of February 2026, the average processing time at the BIA for a non-detained case like Mr. Khalil's was 795 days).

[12] *See* Exhibit D, Declaration of Benjamin R. Winograd. As explained below, per the *New York Times*, there is now evidence showing that the BIA specifically expedited the processing and handling of Mr. Khalil's case, even before the IJ had issued her removal order.

24. Only several hours after the Third Circuit's January 15 panel decision, the BIA issued a notice stating that a briefing schedule would be set "forthwith."[13] Shortly thereafter, Mr. Khalil filed a notice requesting that the BIA defer setting a briefing schedule until January 20 to allow the parties an opportunity to meet and confer. On January 16, the BIA issued two briefing schedules, without acknowledging Mr. Khalil's notice. The first ordered sequential briefing, allotting twenty-one days for Mr. Khalil's opening brief and twenty-one days for the government's opposition. Later that day, the BIA issued a second revised schedule requiring simultaneous briefing by both parties—due within twenty-one days of the Third Circuit's panel decision—by February 6, 2026. The BIA's simultaneous briefing schedule conflicted with the regulation governing the timing of appeal briefs in non-detained cases such as Mr. Khalil's. *See* 8 C.F.R. § 1003.3(c)(1); BIA Practice Manual Ch. 3.7(a)(1). Mr. Khalil and DHS subsequently conferred and filed a joint motion seeking a revised briefing schedule consistent with their agreement in federal court.

25. On April 9, 2026, nine days after the close of briefing, the BIA issued a decision dismissing Mr. Khalil's appeal and denying his motion to remand proceedings to the immigration court to present highly relevant evidence of First Amendment retaliation that came to light–after Mr. Khalil's removal proceedings before the IJ concluded and after the Third Circuit panel issued its split decision–through discovery in *American Association of University Professors v. Rubio*, Case No. 1:25-cv-10685-WGY (D. Mass.).

26. In its decision, issued nine days after Mr. Khalil filed his petition for rehearing en banc in his Third Circuit proceedings, the BIA indicated it was unaware of whether a petition for

[13] The BIA had previously instructed the parties to notify it "when the Third Circuit decides the appeal," and indicated that a briefing schedule would be issued thereafter. The BIA's January 15 notice issued before the parties had provided it with any such notice.

rehearing en banc had actually been filed, and therefore concluded that the mandate in Mr. Khalil's Third Circuit proceedings had issued and that the District Court's injunction no longer bound the BIA. This legal and factual error by the BIA, *see supra* n.7, is impossible to square with reality, given that the BIA is a party to Mr. Khalil's extremely high-profile Third Circuit proceedings and had previously made clear it was immediately updated on developments in the case.

27. The BIA issued its April 9 decision as unpublished, meaning it was not public and lacked precedential value. Then, six days later, the BIA made the determination to publish the decision in Mr. Khalil's case on April 15, 2026. *See Matter of M-K-*, 29 I&N Dec. 556 (BIA 2026). The publication process the BIA used in this instance was unusual. A review of published decisions by the BIA demonstrates that decisions are typically either published on the date the decision is issued, or, if they are published at a later date, are designated as precedent pursuant to an order by the Attorney General. *See* 8 C.F.R. § 1003.1(g)(3) (2026); AG/BIA Precedent Decisions, https://www.justice.gov/eoir/ag-bia-decisions. In Mr. Khalil's case, however, the BIA itself designated the decision as precedent a week after publication, a process that, while provided for by regulation, *see* 8 C.F.R. § 1003.1(g)(3) (permitting designation of precedent by the BIA upon the vote of a majority of permanent members), does not appear to have been followed in any other recent cases selected for publication *after* an unpublished decision was initially issued. *See* 29 I&N Dec. 556 at n.1. The published decision continued to maintain that there was no evidence that the mandate in the Third Circuit case had not yet issued, despite the BIA having that evidence because Mr. Khalil filed it in support of a motion to reconsider on April 15 highlighting the BIA's clear error.

28. On May 8, 2026, the *New York Times* reported that "[i]nternal [B]oard documents obtained by the New York Times show that the case was considered high priority even before the [B]oard officially received it." *See* Exhibit B, *New York Times* Article. "A note from an internal

case-tracking file from June [2025] said that, even though Mr. Khalil had been released several days earlier, the case was to be handled as if he were still in detention, which would speed it along." *Id*. Later notes reflect that Board personnel were instructed to "Please process as quickly as possible," and that Mr. Khalil's appeal was overseen by the Board's "highest ranking member"[14] from early on, even though, on information and belief, appeals are supposed to be randomly assigned. *Id*.

29. The *New York Times* also reports that, in the process undertaken to determine whether to publish the decision, several current members of the BIA recused from the publication vote. *Id*. The BIA's Ethics and Professionalism Guide for Members of the BIA provides that "[a] Board Member is banned from adjudicating any cases in which he/she participated personally and substantially prior to becoming a Board Member. A Board Member may not adjudicate a case if he/she: has personal knowledge of the disputed facts; participated as counselor or advisor in the case; or expressed an opinion concerning the merits of the particular case in controversy."[15] Based on this ethical guidance, it is a reasonable inference that the BIA members who recused (as well as any additional BIA members who should have recused themselves but did not) did so because they had been involved in the decision-making and/or drafting process of the underlying IJ decisions, or otherwise participated in the adjudication of Mr. Khalil's case before it reached the BIA.

30. Influence by BIA members or other federal agencies or officials on the decisions issued in Mr. Khalil's case would be a clear violation of the regulatory duty to impartially decide

[14] Garry D. Malphrus is currently the Chief Appellate Immigration Judge, and he is one of the AIJs who issued the BIA's decision in Mr. Khalil's case.

[15] *See* Ethics and Professionalism Guide for Members of the Board of Immigration Appeals, Section XI, May 4, 2011, available at https://www.justice.gov/d9/pages/attachments/2017/08/24/bia_ethics_and_professionalism_guvide_for_board_members.pdf.

cases. *See* 8 C.F.R. § 1003.10(b) ("In deciding the individual cases before them, and subject to the applicable governing standards set forth in paragraph (d) of this section, immigration judges *shall* exercise their independent judgment and discretion[.]…In all cases, immigration judges shall seek to resolve the questions before them in a timely and impartial manner consistent with the Act and regulations.") (emphasis added); 8 C.F.R. § 1003.1(d) ("The Board should resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations.").

31. Further, any exercise of control by the individual BIA members over the decision-making process in Mr. Khalil's proceedings would be a violation of the members' ethical and regulatory obligations in their prior roles. As just a few examples, Board member Sirce Owen was Acting Director of EOIR during the entire pendency of Mr. Khalil's removal proceedings before IJ Comans.[16] The Director of EOIR "shall have no authority to adjudicate cases arising under the Act or regulations or to direct the result of an adjudication assigned to the Board, an immigration judge, the Chief Administrative Hearing Officer, or an Administrative Law Judge."[17] Board member Stephanie Gorman, meanwhile, served on detail as the Acting Assistant Director of the Office of Policy between February 2025 and October 2025. Pursuant to regulation, the Assistant Director for Policy "shall not direct the result of an adjudication assigned to the Board, an immigration judge, the Chief Administrative Hearing Officer, or an Administrative Law Judge."[18] Board member Gregory Radics, who was appointed to the BIA in January 2026, was in the General Counsel's office during the pendency of Mr. Khalil's removal proceedings. Pursuant to regulation,

[16] *See* EOIR, *Board of Immigration Appeals*, available at https://www.justice.gov/eoir/board-of-immigration-appeals#board.
[17] 8 C.F.R. § 1003.0(c).
[18] 8 C.F.R. § 1003.0(e)(2).

"the General Counsel shall have no authority, directly or indirectly, to direct or influence the adjudication of any cases under the Act."[19]

32. On May 18, Mr. Khalil filed a Motion to Reopen with the BIA because the information released by the *New York Times* showed he was deprived of a fair hearing before a neutral adjudicator and an impartial review on appeal.[20] Former long-time EOIR employees attested that the highly unusual treatment of Mr. Khalil's case and abnormal recusals strongly suggest that current BIA members were involved in the underlying IJ decisions, in violation of the IJ's regulatory duty to adjudicate cases independently, their own regulatory and ethical obligations, and Mr. Khalil's due process rights. *See* Exhibit E (Declaration of Andrea Saenz); Exhibit F (Declaration of Dana Leigh Marks); Exhibit G (Declaration of Ryan R. Wood).

33. On September 25, 2026, the BIA denied Mr. Khalil's Motion to Reconsider, *see* ¶ 27, continuing to ignore and refusing to comply with the still in place and binding injunction issued in *Khalil v. Joyce*, Case No. 2:25-cv-01963-MEF (D.N.J.), ROA.9841-54. A copy of the BIA's decision denying the Motion to Reconsider is attached as Exhibit H.

34. Also on September 25, 2026, the BIA issued a published decision denying Mr. Khalil's Motion to Reopen. *Matter of M-K-*, 30 I&N Dec. 84 (BIA 2026) (attached as Exhibit I). In its decision, the BIA refused to reopen proceedings so that Mr. Khalil could conduct discovery regarding revelations that the agency denied him a fair hearing before a neutral adjudicator and so that he could be provided with a full and fair evidentiary hearing. In addition, the BIA did not disclose information within the agency's sole possession which is relevant to Mr. Khalil claims,

---

[19] 8 C.F.R. § 1003.0(f).

[20] *See* "After New Evidence of DOJ Misconduct, Mahmoud Khalil Calls On Board of Immigration Appeals to Terminate Case," ACLU (May 15, 2026), https://www.aclu.org/press-releases/after-new-evidence-of-doj-misconduct-mahmoud-khalil-calls-on-board-of-immigration-appeals-to-terminate-case (linking Motion to Reopen).

as he had requested, including any explanation for why three members of the BIA recused themselves from his case.

35. The BIA further denied the existence of systemic issues evidencing the lack of neutrality throughout EOIR, despite qualitative and quantitative research contradicting its assertions. An empirical analysis of 79,149 published and unpublished BIA decisions issued from January 21, 2024 to January 20, 2026, shows that the noncitizen-filed grant rate fell from 20.05% to 10.31% in just the first year of the Trump Administration—a "statistically significant" decline spanning "every appeal type" and "both represented and pro se noncitizens." Jayashri Srikantiah & Rajan Lukose, *The Board of Immigration Appeals Under the Second Trump Administration: An Empirical Analysis of Grant Rates and DHS Appellate Behavior*, STAN. L. SCH. 1-3 (Mar. 23, 2026), https://law.stanford.edu/documents/research-on-bia-decision-making [https://perma.cc/WV52-8FDT]. And the BIA's published precedential decisions have been near-uniformly decided in the government's favor. *See, e.g.*, Cade, Jason A., *Welcome to the Trump Administration's Board of Immigration Appeals. The Immigrant Always Loses*, 136 Yale Law Journal Forum 24 (2026).

36. Notably, on October 9, 2026, twenty-nine members of Congress sent a letter to Attorney General Todd Blanche, DHS Secretary Markwayne Mullin, and Acting Director of EOIR Sirce Owen expressing concerns over "unresolved questions regarding potential directives and supervisory practices governing immigration judges," which "raise[] serious concerns about whether immigration judges retain sufficient independence to make individualized bond determinations based on the facts and applicable law." *See* Letter from Judy Chu, Member of Cong., et al., to Markwayne Mullin, Sec'y, U.S. Dep't of Homeland Sec., Todd Blanche, Att'y Gen., U.S. Dep't of Just., & Sirce E. Owen, Acting Dir., Exec. Off. for Immigr. Rev. (Oct. 9, 2026), https://chu.house.gov/sites/evo-subsites/chu-evo.house.gov/files/evo-media-

document/letter-to-trump-administration-on-immigration-bond-denials.pdf [https://perma.cc/8F5Q-MABC]. This letter parallels several of the concerns regarding bias and partiality throughout EOIR that Mr. Khalil identified in his Motion to Reopen.[21]

37. Mr. Khalil and the public have a significant interest in discovering whether agency employees or other government officials unlawfully directed or participated in the adjudication of his case and deprived him of his due process right to a full and fair hearing. Mr. Khalil's case has attracted national and international attention. Moreover, the politicization of removal proceedings has become an issue of increasing concern, with numerous entities and members of Congress calling for the bias and partiality that is endemic throughout the immigration system to be addressed and corrected.

**III. Plaintiffs' Requests for Information**

23. On May 8, 2026, Plaintiffs submitted their FOIA/PA request via email and online web platforms to Defendants DOJ, EOIR, DOJ-OIP, DOJ-Civil Division, DOJ Criminal Division, DOJ-NSD, DOJ Executive Office of U.S. Attorneys, and DOJ Office of Legal Counsel.

*DOJ Civil Division Response*

24. On May 15, 2026, DOJ-Civil Division assigned the tracking number #145-FOI-26-22769 to Plaintiff's FOIA request. The response denied Plaintiffs' request for expedited processing.

25. On June 10, 2026, Plaintiffs appealed the denial of expedited processing by DOJ-Civil Division via email and also restated their fee waiver request.

26. On June 16, 2026, Plaintiffs received an email and letter from DOJ acknowledging their administrative appeal and assigning it #A-2026-01680.

[21] *See also*, *supra*, at n. 9-10.

27. To date, Plaintiffs have received no further response from the DOJ-Civil Division to either their FOIA request or their appeal.

*DOJ Criminal Division*

28. On May 11, 2026, DOJ Criminal Division acknowledged Plaintiffs' FOIA request and assigned it tracking number CRM-302452958. The letter alleged that Plaintiffs' request was not "sufficiently detailed" and stated it would administratively close Plaintiffs' request within 30 days if more information was not provided.

29. On June 8, 2026, Plaintiffs responded to DOJ Criminal Division with a letter stating the reasons why Plaintiffs request should not be closed, and that the agency should immediately continue processing the FOIA request.

30. On June 9, 2026, DOJ Criminal Division responded to Plaintiffs by email, stating that Plaintiffs' FOIA request did not "provide a nexus" to the DOJ Criminal Division and so they would proceed in closing Plaintiffs FOIA request. DOJ Criminal Division provided no legal basis for the administrative closure.

31. To date, DOJ Criminal Division has provided no further correspondence in regard to Plaintiffs' FOIA request.

*DOJ Main Office*

32. On May 13, 2026, the DOJ assigned Plaintiffs' FOIA request tracking number EMRUFOIA050826-10 and sent a letter via email acknowledging receipt, which also noted that it was further referring Plaintiffs' FOIA request to several separate DOJ components, including DOJ Executive Office of Attorneys, DOJ Civil Division, EOIR, DOJ Office of Information Policy, DOJ Criminal Division, DOJ National Security Division, DOJ Civil Rights Division, and DOJ Office of Legal Counsel.

33. Plaintiffs have received no further response from DOJ in regards to tracking number EMRUFOIA050826-10. Many but not all of the components to whom Plaintiffs' request was referred had also been sent Plaintiffs' FOIA request directly.

*DOJ National Security Division ("DOJ NSD")*

34. On June 29, 2026, DOJ NSD acknowledged Plaintiffs' FOIA request, assigning it the tracking number NSD FOWPA #26-226, and denied Plaintiffs' request for expedited processing.

35. To date, Plaintiffs have received no further correspondence from DOJ NSD.

*DOJ Office of Information Policy*

36. To date, Plaintiffs have received no response from DOJ OIP.

*DOJ Office of Legal Counsel ("DOJ OLC")*

37. On May 14, 2026, Plaintiffs received an acknowledgment from DOJ-OLC which assigned the tracking number FY26-175. The acknowledgment denied Plaintiffs' request for expedited processing.

38. On June 11, 2026, Plaintiffs administratively appealed DOJ-OLC's denial of expedited processing. Plaintiffs also again requested a fee waiver.

39. On June 16, 2026, Plaintiffs received an acknowledgment of their administrative appeal, which was assigned tracking number A-2026-01678.

40. To date, Plaintiffs have received nothing further from DOJ-OLC.

*DOJ Executive Office of U.S. Attorneys*

41. To date, Plaintiffs have received no response from DOJ Executive Office of U.S. Attorneys.

*EOIR*

42. On May 20, 2026, Defendant EOIR acknowledged Plaintiffs' FOIA request and assigned it tracking number 2026-40709. The response noted that Plaintiffs' request "was closed in error" and that EOIR was now "reopening your request for processing." The response also stated that Plaintiffs' FOIA request was "unreasonably burdensome" and that EOIR was placing our FOIA request "on hold."

43. On June 10, 2026, Plaintiffs emailed a letter in response, clarifying the reasons why the FOIA request was not "overly broad" or "unreasonably burdensome" and stating EOIR should resume processing their FOIA request immediately.

44. On June 23, 2026, Plaintiffs emailed EOIR again requesting EOIR confirm receipt of the June 10 letter and provide an update on their FOIA request.

45. On June 24, 2026, EOIR sent a response to Plaintiffs stating it had administratively closed Plaintiffs' FOIA request because EOIR "had not heard" from Plaintiffs.

46. On June 24, 2026, Plaintiffs responded to EOIR stating that the agency should not have closed Plaintiffs' FOIA request as Plaintiffs had emailed twice previously. Plaintiffs attached all previous unanswered correspondence to their email to EOIR.

47. On July 2, 2026, Plaintiffs administratively appealed the closure of their FOIA request by EOIR.

48. On July 2, 2026, EOIR / DOJ-OIP acknowledged Plaintiffs' administrative appeal and assigned it tracking number A-2026-01811.

49. To date, Plaintiffs have received no further correspondence from EOIR in relation to either the appeal or their FOIA request.

*DOJ Civil Rights Division*

50. On May 13, 2026, DOJ referred Plaintiffs' FOIA request to DOJ Civil Rights Division (see para 34).

51. To date, Plaintiffs have received no response from DOJ Civil Rights Division.

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of FOIA for Failure to Disclose and Release Responsive Records**

52. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 51 as if repeated and incorporated herein.

53. By failing to make a determination on Plaintiffs' FOIA requests within the mandated statutory timeframe, by failing to disclose and release the requested records, and by failing to conduct an adequate search reasonably calculated to uncover responsive records, Defendants, as well as their components, have violated the public's right, advanced by the Plaintiffs, to agency records under 5 U.S.C. §§ 552 *et seq*.

### COUNT TWO

**Violation of FOIA for Improper Denial of Plaintiffs' Request for Expedited Processing**

54. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 51 as if repeated and incorporated herein.

55. By denying or failing to respond timely to Plaintiffs' requests for expedited processing, Defendants, as well as their components, have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(6)(E) and their own regulations, 28 CFR § 16.5(e).

### COUNT THREE

**Violation of FOIA for Improper Denial of Plaintiffs' Request for Fee Waiver**

56. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 51 as if repeated and incorporated herein.

57. By failing to respond or failing to non-conditionally grant Plaintiffs' requests for fee waivers, Defendants, as well as their components, have denied Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii) and their own regulations, 28 CFR § 16.10(k).

**COUNT FOUR**

**Violation of PA for Failing to Disclose Responsive Records**

58. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

59. Plaintiffs are seeking access to information about Mr. Khalil, who has consented to the disclosure of his records.

60. Records related to Mr. Khalil are contained in Defendants' system of records, as described under 5 U.S.C. § 552a(a)(4)-(5).

61. Plaintiffs have exhausted all required and available administrative remedies.

62. By failing to provide records about Mr. Khalil that are maintained in a system of records, Defendants have violated Plaintiffs' rights under 5 U.S.C. §§ 552a(d)(1), (g)(1)(B) and Defendants' own regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Order Defendants immediately to make a full, adequate, and expedited search for the requested records;

(b) Order Defendants to engage in expedited processing in this action per 5 U.S.C. § 552(a)(6)(E);

(c) Enjoin Defendants from assessing fees or costs for the processing of the FOIA/PA Request;

(d) Order Defendants to disclose the requested records in their entirety and make copies available to Plaintiffs no later than ten days after the Court's order;

(e) Award Plaintiffs their costs and reasonable attorney's fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E), 552a(g)(3)(B); and

(f) Grant each other and further relief as this Court may deem just and proper.

Dated: November 18, 2026
New York, NY

/s/ Baher Azmy
Baher Azmy
Center for Constitutional Rights
666 Broadway, 7th Floor
(212) 614-6464
bazmy@ccrjustice.org

Marc Van Der Hout*
Johnny Sinodis*
Oona Cahill*
Van Der Hout LLP
360 Post St., Suite 800
San Francisco, CA 94108
(415) 981-3000
ndca@vblaw.com

Alina Das, Esq.
Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu

* Pro hac vice petitions forthcoming

*Counsel for Plaintiffs*