# EXHIBIT B

The New York Times | https://www.nytimes.com/2026/05/08/nyregion/mahmoud-khalil-deportation-case.html

# *Mahmoud Khalil Hurtles Toward Potential Deportation as U.S. Speeds Case*

A key judicial decision in Mr. Khalil's immigration case was expedited significantly and included the recusal of multiple judges.

Listen · 9:25 min




**By Jonah E. Bromwich and Nicholas Nehamas**

May 8, 2026, 2:39 p.m. ET

See more of our coverage in your search results.

**Add The New York Times on Google ↗**

Mahmoud Khalil, a Columbia University graduate who became the face of President Trump's crackdown on pro-Palestinian protesters, could be deported before the Supreme Court hears his case after an unusually speedy decision from a court within the Justice Department.

The decision last month included the recusal of multiple judges, continuing a pattern of abnormality that has marked the case from its outset. It concluded with the court upholding a lower immigration court's finding that Mr. Khalil could be expelled from the United States.

Mr. Khalil, 31, a legal permanent resident who is married to an American wife, mediated when Columbia and protesters clashed during demonstrations that rocked the university's campus in 2024. The next year, after Mr. Trump had

returned to the White House, Mr. Khalil was arrested and the administration moved to deport him.

Though it is part of the Justice Department, the court that made last month's decision, called the Board of Immigration Appeals, is required by law to make decisions independently.

Internal board documents obtained by The New York Times show that the case was considered high priority even before the board officially received it. A note from an internal case-tracking file from June said that, even though Mr. Khalil had been released several days earlier, the case was to be handled as if he were still in detention, which would speed it along.

"Please process as quickly as possible," said another note, from October. Another document shows that the court's chair — its highest ranking member — oversaw the case from early on.

The board made its decision within nine days of the final court papers being filed in the case. Such decisions typically come years after papers are filed in cases in which the noncitizen is not detained.

"That kind of timeline is unprecedented," said Homero López, who was appointed to the board under President Joseph R. Biden Jr. and then fired under Mr. Trump. "It's an insane turnaround, particularly for such a high-profile case on a novel legal issue."

Additionally, at least three judges recused themselves from the process, according to people with knowledge of the matter.

The reason for the recusals is unclear. But the recusal of more than one judge is highly unusual.

Andrea Saenz, a former board judge who was fired by the administration in March 2025, said recusals would typically happen when judges had a conflict of interest, often because they had been involved in a case before it reached the appeals stage.

"For there to be multiple judges recusing from a case, especially a high-profile case, raises questions about whether they had somehow been looped into the case at an earlier stage," she said, asking: "How many people touched this case when the immigration judge was handling it the first time?"

A Justice Department official said that the department could not comment on "specifics from alleged files we have not seen by time of publication," adding that Mr. Khalil's case was first filed in the relevant system when he was in detention. "The time frame is not abnormal for a detained case," the official added.

Under Mr. Trump, the Justice Department has moved to exert closer control over the appeals board, slashing the number of judges, firing Biden-era appointees and filling the remaining spots with lawyers seen as aligned with the president's agenda. The board has since churned out decisions, often making it easier for the government to detain and deport immigrants. At the same time, the administration has sought to reshape the immigration court system more broadly, dismissing judges whose decisions run counter to the White House's policy preferences.

The unusual aspects of the Khalil case have raised questions among immigration lawyers and other close observers of the system about the potential influence of Trump administration officials, who have sought to make an example of Mr. Khalil since his arrest. The Justice Department has faced criticism for targeting the administration's political enemies.

Marc Van Der Hout, the lead lawyer in Mr. Khalil's immigration case, said that the abnormalities showed that the case "has been controlled from Day 1 by higher-ups in the administration."

A White House spokeswoman, Abigail Jackson, did not directly address the question of White House involvement, but said in a statement that "the executive branch has the lawful authority to take actions that will protect the public and to ensure the integrity of our immigration system."

She accused Mr. Khalil of obtaining his visa “by willfully and intentionally failing to accurately report information relevant to his background,” which Mr. Khalil has denied doing.

David McConnell, a former senior Justice Department official who handled immigration appeals, said that the speed of the decision and the number of recusals were “very unusual” but not necessarily a signal of something nefarious. During previous administrations, he said, senior officials would occasionally fast-track cases that presented pressing legal issues.

“They can move quickly when there is some particular reason to do it,” Mr. McConnell said. “The ultimate question is: Were the board members correct? Did they get the law right?”

Secretary of State Marco Rubio, as part of the effort to deport Mr. Khalil, cited a rarely-used statute, declaring that Mr. Khalil should be expelled because his presence in the United States spread antisemitism to a degree that could threaten American foreign policy interests. (Mr. Khalil, who comes from a family of Palestinian refugees, has repeatedly condemned antisemitism and argued that protesting on behalf of Palestinians is not inherently anti-Jewish.)

His arrest spurred questions about whether Mr. Rubio’s determination ran afoul of the First Amendment. The government added a new rationale for deporting him, saying that Mr. Khalil had willfully failed to disclose that he was a “member” of a United Nations agency for Palestinian refugees — widely known as UNRWA — when he applied to become a permanent U.S. resident in March 2024, among other failures of disclosure.

Mr. Khalil, who is fighting the case both in immigration court and Federal District Court, has argued that those allegations do not match up with reality.

The district court judge evaluating Mr. Khalil’s case, Michael E. Farbiarz, concluded after several months that Mr. Rubio’s declaration was most likely unconstitutional and that it would be highly unusual for the United States to keep Mr. Khalil in detention for the other allegations. He freed Mr. Khalil in June 2025.

By then, Mr. Khalil had missed the birth of his child, and his future in the United States remained in doubt. In January, a federal appeals court ruled that Judge Farbiarz had not had the authority to free Mr. Khalil and that immigration court was the appropriate venue for his case at that time.

That ruling made the Board of Immigration Appeals's swift pair of decisions last month all the more important.

The board is the highest level of immigration court before cases move into federal appeals court. It held that Mr. Khalil could be deported both because of Mr. Rubio's determination and because of the paperwork allegations.

A first judge recused before the initial decision was made, according to the people with knowledge of the process. The board then moved to "publish" the case — a larger vote that classifies a case as precedent-setting, meaning that its findings would apply to relevant immigration cases going forward. The other recusals came during that process, the people said.

Mr. Khalil has asked a full federal appeals court to review the January decision that granted authority to the immigration court, and it is expected to rule in the coming days. If it decides not to take up his case — and his lawyers are unsuccessful in persuading federal judges to pause the effect of the appeals courts' ruling — Mr. Khalil could soon be expelled from the United States.

Kitty Bennett contributed research.

**Jonah E. Bromwich** covers criminal justice in the New York region for The Times. He is focused on political influence and its effect on the rule of law in the area's federal and state courts.

**Nicholas Nehamas** is a Washington correspondent for The Times, focusing on the Trump administration and its efforts to transform the federal government.