# EXHIBIT C

# DECLARATION OF ZABDI J. SALAZAR ON BIA NON-DETAINED CASE APPEALS PROCESSING TIMES, COHORT COMPOSITION, AND OUTCOME PATTERNS

I, Zabdi J. Salazar, do depose and state:

## INTRODUCTION

1. I am a Ph.D. candidate in Jurisprudence and Social Policy at Berkeley Law, where I conduct empirical analysis of immigration adjudication using EOIR administrative case data. A true and correct copy of my curriculum vitae is attached as Exhibit A.
2. For this declaration, I analyzed non-detained case appeals before the Board of Immigration Appeals ("BIA"), focusing on processing times, filing-cohort composition, and outcome patterns in 2024 and 2025 decisions. My analysis shows that these appeals generally take hundreds of days—and often years—to resolve. Against that backdrop, the 2025 decided docket was more heavily weighted toward recently filed appeals than the 2024 docket, even as older cohorts remained pending in substantial numbers. It also included a higher concentration of procedural dismissals. That pattern was especially sharp among appeals filed and decided in 2025, where procedural dismissals were substantially more common than in the corresponding 2024 same-year cohort and favorable outcomes were nearly nonexistent. Within the 2025 decided docket, the fastest resolutions were overwhelmingly procedural or administrative, while remands and substantive adverse outcomes generally took longer to resolve.

## METHODOLOGY

3. I analyzed the Deportation Data Project's processed EOIR removal case-level dataset, a file derived from EOIR administrative records that consolidates selected variables from multiple EOIR source tables, including appeal-related variables, into a single row per removal case. For this declaration, I focused on direct BIA case appeals in non-detained removal cases, defined here as cases coded N or R for custody status. Custody status may change over the course of proceedings. This analysis uses the custody_at_appeal code from the Deportation Data Project's processed EOIR case-level dataset, which reflects custody status at the time of the most recent BIA appeal.
4. I measured completed-case processing time as the number of calendar days between the appeal filing date and the BIA decision date, and pending time as the number of calendar days between the appeal filing date and February 27, 2026. For the recency analysis, I compared the filing-year composition of non-detained case appeals decided in 2024 and 2025, and separately examined the 2025 filing-

cohort composition of both decided appeals and still-pending appeals as of February 27, 2026.

5. For the outcome analysis, I examined filing year, decision year, and BIA decision code, and grouped completed appeals into six categories: Procedural Dismissal, Substantive Adverse, Admin / Withdrawal, Remand, Favorable Merits, and Favorable Non-Merits, as set out in Exh. E (Outcome Category Mapping). "Favorable Non-Merits" captures dispositions that are non-adverse in practical effect but are not merits grants. Remand is treated as a separate category because it returns the case for further proceedings and does not map cleanly onto a simple favorable/unfavorable framework. For the remand-rate analysis, I also examined who filed the appeal, using the filer-type field in the processed EOIR case-level dataset to compare remand patterns by filer type in non-detained BIA case appeals decided in 2024 and 2025.

**FINDINGS: NON-DETAINED CASE APPEAL PROCESSING TIMES**

6. The processing-time data show that non-detained BIA case appeals generally take hundreds of days to resolve, with a strongly right-skewed distribution. Between January 1, 2024 and February 27, 2026, I identified 45,135 completed non-detained case appeals. Exh. B (BIA Appeal Processing Timetables), Table 1. Their mean processing time was 795.4 days and their median processing time was 565 days. The 25th percentile was 157 days, the 75th percentile was 1,520 days, the 90th percentile was 1,797 days, the 95th percentile was 1,982 days, and the maximum observed processing time was 4,130 days. Exh. B, Table 3. The completed docket also skewed older: the largest age bucket consisted of appeals that took more than four years to resolve (26.6%), and 57.3% of completed appeals took more than one year to resolve. Exh. B, Table 4.

7. As of February 27, 2026, I identified 181,972 pending non-detained case appeals. Exh. B, Table 2. The mean pending time was 740.6 days, and the median was 452 days. The 25th percentile was 206 days, the 75th percentile was 1,158 days, the 90th percentile was 1,947 days, the 95th percentile was 2,205 days, and the oldest pending case had been awaiting a decision for 2,613 days. Exh. B, Table 5. The pending docket was also deeply aged: 38.1% of pending non-detained appeals had been awaiting a decision for more than two years, and 17.1% for more than four years. Exh. B, Table 6.

8. These results show that non-detained BIA case appeals often remain pending for long periods and commonly take hundreds of days—and often years—to resolve.

**FINDINGS: RECENCY SHIFT IN THE 2025 DECISION DOCKET**

9. The 2025 decision docket was more heavily weighted toward recently filed appeals than the 2024 docket. Appeals filed in 2025 accounted for 30.6% of non-

detained case-appeal decisions in 2025; by comparison, appeals filed in 2024 accounted for 21.3% of such decisions in 2024. Exh. C (BIA Appeal Cohort and Timing Tables), Table 1. A rolling measure shows the same pattern: among appeals decided in each year, the share filed within the preceding 365 days rose from 38.1% in 2024 to 46.0% in 2025, a statistically significant increase. Exh. C, Table 2.

10. That recency shift appeared alongside an unresolved older docket. Among appeals decided in 2025, only 4.2% came from the 2019 filing cohort, even though 5,652 2019-filed appeals remained pending as of February 27, 2026. Large numbers of older cohorts likewise remained unresolved. Exh. C, Table 3.

11. These patterns are consistent with a 2025 decision docket disproportionately concentrated on recently filed appeals even while many older appeals remained pending.

## FINDINGS: OUTCOME MIX AND DECISION-CODE PATTERNS

### Same-year cohorts

12. Among non-detained case appeals filed and decided in the same year, the share ending in procedural dismissal rose from 29.8% in the 2024 cohort to 47.7% in the 2025 cohort—a statistically significant increase of 17.9 percentage points, making the procedural dismissal share in the 2025 cohort about 60% higher than in the 2024 cohort. Exh. C (BIA Appeal Cohort and Timing Tables), Table 4. In the 2025 same-year cohort, 96.6% of cases ended in procedural dismissal, substantive adverse, or administrative/withdrawal dispositions; favorable outcomes were nearly absent. Exh. C, Table 4.

13. A related breakdown of adverse outcomes shows that procedural adverse dispositions were concentrated in the newest filing cohorts within 2025 decisions. Among adverse decisions issued in 2025, 35.8% of the 2024 filing cohort and 52.4% of the 2025 filing cohort were resolved procedurally rather than substantively. Exh. C, Table 7. This indicates that procedural dismissals were especially common in the newest adverse cohorts, and that among adverse appeals both filed and decided in 2025, procedural dismissals outnumbered substantive adverse outcomes. Exh. C, Table 7.

### Full 2024-versus-2025 decision-year comparison

14. Looking across all non-detained case appeals decided in 2024 and 2025, regardless of filing year, the overall outcome distribution also shifted significantly. Procedural dismissals rose from 15.1% to 23.4%, substantive adverse outcomes fell from 64.0% to 55.2%, administrative or withdrawal

dispositions rose from 1.9% to 3.9%, and remands rose from 11.8% to 14.3%. Exh. C, Table 5.

15. The code-level comparison helps explain that broader change. DIS-coded decisions (dismiss / affirm IJ) fell from 2024 to 2025 while procedural dismissal-coded decisions increased. SDG (summary dismissal—untimely or waived) rose from 3.6% to 8.7%, and SUD (summarily dismissed) rose from 5.8% to 9.2%. Exh. C, Table 6.

16. The rise in the remand share in the full 2025 decision-year docket appears to have been influenced in substantial part by filer mix. Among noncitizen-filed appeals, the remand rate fell from 10.6% in 2024 to 6.2% in 2025. Among DHS-filed appeals, by contrast, the remand rate rose from 53.5% to 82.2%. DHS-filed appeals decided in 2025 were concentrated primarily in the 2023 and 2024 filing cohorts, rather than in same-year 2025 filings. Exh. D (Remand Patterns by Filer Type).

## FINDINGS: TIMING AND OUTCOME SELECTION IN 2025 DECISIONS

17. Among all non-detained case appeals decided in 2025, timing was strongly linked to outcome. Procedural dismissals had a median processing time of 182 days, compared with 209 days for administrative/withdrawal dispositions, 791 days for remands, 1,009 days for substantive adverse outcomes, 1,235 days for favorable merits outcomes, and 1,163.5 days for favorable non-merits outcomes. Exh. C (BIA Appeal Cohort and Timing Tables), Table 8.

18. The processing-time buckets show the same pattern. Among cases resolved in fewer than 90 days, 75.3% were procedural dismissals and 18.6% were administrative/withdrawal dispositions. In the 1- to 2-year bucket, remands accounted for 54.5% of cases. In the 2- to 4-year bucket, 55.6% of cases were substantive adverse outcomes, and in the 4+ year bucket, 77.8% were substantive adverse outcomes. Exh. C, Table 9.

19. These results indicate that the very fastest 2025 resolutions were overwhelmingly procedural or administrative, whereas remands and favorable outcomes generally took longer and substantive adverse outcomes predominated in the longest-resolution-time buckets.

## CONCLUSION

20. The data show that non-detained BIA case appeals ordinarily take hundreds of days to resolve, and often years. The data further show that the 2025 decided docket was more heavily weighted toward recently filed appeals than the 2024 docket, with 30.6% of 2025 decisions coming from appeals filed in 2025 itself, even while older cohorts remained pending in substantial numbers. The 2025 decided docket also included a higher concentration of procedural dismissals than

the 2024 docket. That pattern was especially sharp among appeals both filed and decided in 2025, where procedural dismissals outnumbered substantive adverse outcomes and favorable outcomes were nearly nonexistent. Finally, within the 2025 decided docket, the fastest resolved cases were predominantly procedural or administrative outcomes, while remands and substantive adverse outcomes generally took longer to resolve.

**INDEX OF EXHIBITS**


| Exh. | Description | Page(s) |
|---|---|---|
| A | Curriculum Vitae of Zabdi J. Salazar | 1-2 |
| B | BIA Appeal Processing Timetables (Jan. 1, 2024 to Feb. 27, 2026) | 3-5 |
| C | BIA Non-Detained Case Appeals: 2024-2025 Cohort, Outcome, and Timing Tables | 6-10 |
| D | BIA Non-Detained Case Appeals: Remand Patterns by Filer Type | 11-14 |
| E | Outcome Category Mapping for Non-Detained BIA Case Appeals | 15 |


I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2026, at Berkeley, California.

Zabdi J. Salazar

Zabdi J. Salazar

# ZABDI SALAZAR

Berkeley, CA • 512-299-7294 • zsalazar2019@berkeley.edu

## EDUCATION

**University of California, Berkeley, School of Law,** Berkeley, CA
Ph.D. Candidate, Jurisprudence & Social Policy (Expected May 2027)
Juris Doctor, May 2024; State Bar of Texas, admitted October 2024

Dissertation: *The Administrative Ratchet: Executive Power and the Courts in U.S. Asylum Adjudication*
Committee: David Hausman (Co-Chair), Calvin Morrill (Co-Chair), Jennifer Chacon, Rachel Stern
Description: Three-article dissertation examining how executive intervention, deferred judicial review, and circuit-level appellate variation interact to shape asylum adjudication over time.

Field Examinations: Public Law (June 2021); Asylum and the Courts (Dec. 2023); Qualifying Exam (Sept. 2024)

Honors: Berkeley Law Dean's Fellowship; Berkeley Center for Law and Business Scholar; Chancellor's Fellowship for Graduate Study; JSP Cooter-Rubinfeld Fellowship

Methods & Training: ICPSR Summer Program (Modern Difference-in-Difference Designs, 2021; Funding Award); IQMR Certificate, 2021 (Funding Award)

Leadership & Service: *California Law Review*, Vol. 112 Managing Editor; J.D.-Ph.D. Joint Program Committee

**Trinity University,** San Antonio, TX
B.A., *summa cum laude*, in Political Science and Business Administration, May 2019 (Minors in Spanish and Economics)
Honors: Phi Beta Kappa, Beta Gamma Sigma, University Scholar (top 15 students in class)

## PROFESSIONAL EXPERIENCE

**U.S. District Court for the Southern District of Texas,** Houston, TX
Judicial Law Clerk to the Honorable Yvonne Ho — Sept. 2024–Sept. 2025

- Drafted memoranda and recommendations, memorandum opinions and orders, and routine civil orders.
- Conducted complex federal civil research and managed daily docket and motion practice.
- Coordinated closely with chambers staff on case administration and opinion production.

**EOIR, San Francisco Immigration Court,** San Francisco, CA
Law Student Extern — Aug. 2023–Dec. 2023

- Drafted a cancellation-of-removal merits order and an asylum decision involving a family-based PSG.
- Prepared oral decision outlines and credibility analyses; conducted asylum-law research; observed hearings.

**Berkeley Law: Asylum Law Practicum,** Berkeley, CA
Law Student Intern — Jan. 2023–May 2023

- Prepared an affirmative asylum application and letter brief for an Afghan family.
- Drafted detailed client declarations and compiled supporting country-conditions evidence.

**East Bay Community Law Center: Immigration Clinic,** Berkeley, CA
Law Student Intern — Aug. 2022–Dec. 2022

- Conducted general consultations with English- and Spanish-speaking clients regarding immigration-related legal issues and prepared legal documents for DACA renewal, DACA advance parole, and family-based petitions.
- Drafted an asylum brief for an applicant and worked with her to revise and update her declaration.

**U.S. District Court for the Southern District of Texas,** Laredo, TX
Judicial Extern to the Honorable Diana Song Quiroga Jun. 2022–Jul. 2022

- Researched and drafted memos and orders on civil and immigration-related issues, including alternatives to detention, U-visa certification, hearsay in revocation proceedings, and bond and revocation matters.
- Revised filings in civil discovery disputes, assisted with model rules on court performance standards, and observed daily hearings.

## ACADEMIC EXPERIENCE

**University of California, Berkeley, School of Law,** Berkeley, CA Sept. 2023–May 2024
Research Assistant to Professor David Hausman (Immigration Law)

- Conducted empirical research supporting a Central America–U.S. migration estimation model, integrating multi-source administrative data (CBP, INM, COMAR), evaluating recidivism and detection assumptions under Title 8 and Title 42, and compiling cross-national demographic and economic indicators to contextualize regional emigration trends.
- Compiled and synthesized post-2019 federal appellate and district court decisions interpreting 8 U.S.C. § 1252(b)(9), analyzing the scope of jurisdiction-channeling and the treatment of collateral constitutional claims in removal-related litigation.

**University of California, Berkeley,** Berkeley, CA
Graduate Student Instructor Aug. 2020–May 2021

- Planned and delivered lessons for weekly undergraduate discussion sections for two courses: Immigration & Citizenship and Membership & Migration - Empirical and Normative Perspectives.
- Graded assignments, research papers, and exams. Held weekly office hours and review sessions.

## SELECTED PUBLICATIONS AND PRESENTATIONS

- Salazar, Z. "The Executive Pinch: When Executive Power Outruns Judicial Review in Administrative Adjudication." Manuscript in preparation.
- "Immigration Judges & Bureaucracy: The Impact of Case Quotas," *presented at the Berkeley Empirical Legal Studies Fellow Workshop, Center for the Study of Law and Society, Mar. 2, 2023.*
- "The Evolution of the Particular Social Group (PSG) and Domestic Violence Asylum Claims," *presented at the Graduate Seminar Series, UC Davis Global Migration Center, Apr. 30, 2020.*
- Salazar, Z. "Paradoxes of Gender Equality Policies and Domestic Working Conditions in Madrid," *Claremont-UC Undergraduate Research Conference on the European Union Journal*. Vol. 2018, Article 11. Web. Oct. 9, 2018. https://scholarship.claremont.edu/urceu/vol2018/iss1/11

## SELECTED AWARDS AND HONORS

JSP Cooter-Rubinfeld Fellowship, UC Berkeley Aug. 2026–Dec. 2026
D-Lab AI Latinx Fellow, UC Berkeley Jan. 2026–May 2026
Social Sciences Research Pathways Graduate Mentor, IRLE Sept. 2025–May 2026
Teressa K. Lippert Distinguished Service Award (*California Law Review*) May 2024
BELS Fellow (Berkeley Empirical Legal Studies) Aug. 2022–May 2023
LEAP Fellow (Berkeley Law, Economics, and Politics Center) Aug. 2022–May 2023
IRLE Graduate Student Research Award (Institute for Research of Labor and Employment) Jun. 2021
Prosser Prize in Forced Migration Dec. 2022

## SKILLS

**Software:** R; RMarkdown; Git/GitHub; LaTeX; VS Code; command line tools
**Languages:** Spanish (Native), French (Intermediate)

# Exhibit B. BIA Appeal Processing Timetables (Jan. 1, 2024 to Feb. 27, 2026)

These tables summarize the volume and timing of completed and pending BIA appeals, with Tables 1 and 2 comparing major appeal types and Tables 3 through 6 reporting summary statistics and age distributions for non-detained case appeals. Completed case figures reflect appeals decided by the BIA from January 1, 2024 through February 27, 2026. Pending-case figures reflect appeals that remained awaiting decision as of February 27, 2026. For direct case appeals, detained cases are those with custody code D, while non-detained cases are those with custody codes N or R.

**Table 1. BIA Completions by Appeal Type (Jan. 1, 2024 to Feb. 27, 2026)**

| Appeal Type | Total Completions | Average Processing Time (Days) |
|---|---|---|
| Case Appeals (Detained) | 7,033 | 293.5 |
| Case Appeals (Non-Detained) | 45,135 | 795.4 |
| Appeal of IJ MTR | 2,592 | 517.6 |
| MTR-BIA | 10,781 | 198.5 |

Key point: Among the four appeal categories shown here, non-detained case appeals had the longest average processing time during the period, at 795.4 days.

**Table 2. Currently Pending Docket by Appeal Type (as of Feb. 27, 2026)**

| Appeal Type | Pending Cases | Average Days in Queue | Median Days in Queue |
|---|---|---|---|
| Case Appeals (Detained) | 6,993 | 172.7 | 95 |
| Case Appeals (Non-Detained) | 181,972 | 740.6 | 452 |
| Appeal of IJ MTR | 10,248 | 539.7 | 392 |
| MTR-BIA | 6,050 | 431.9 | 262 |

Key point: Non-detained case appeals made up by far the largest pending queue and also had the longest average queue time, with 181,972 pending cases and an average of 740.6 days awaiting decision.

**Table 3. Summary Statistics for Completed Non-Detained Case Appeals**

| Metric | Value |
|---|---|
| Total completions | 45,135 |
| Mean processing time | 795.4 days (about 2 years and 2 months) |
| Median processing time | 565 days (about 1 year and 7 months) |
| Standard deviation | 685.4 days |
| 25th percentile | 157 days |
| 75th percentile | 1,520 days |
| 90th percentile | 1,797 days |
| 95th percentile | 1,982 days (about 5 years and 5 months) |
| Maximum observed | 4,130 days (about 11 years and 4 months) |

Key point: Completed non-detained case appeals remained strongly right-skewed: the mean processing time was 795.4 days, the median was 565 days, and the 95th percentile reached 1,982 days.

**Table 4. Age Distribution for Completed Non-Detained Case Appeals**

| Age Bucket | Cases | Percentage |
|---|---|---|
| < 90 days | 2,377 | 5.3% |
| 90 - 180 days | 10,802 | 23.9% |
| 181 days - 1 year | 6,080 | 13.5% |
| 1 - 1.5 years | 3,021 | 6.7% |
| 1.5 - 2 years | 3,029 | 6.7% |
| 2 - 3 years | 4,725 | 10.5% |
| 3 - 4 years | 3,077 | 6.8% |
| 4+ years | 12,024 | 26.6% |
| **Total** | **45,135** | **100.0%** |

Key point: Completed non-detained case appeals were not concentrated in very recent cases. The largest single bucket was 4+ years (26.6%), and a majority of completed appeals (57.3%) had been pending for more than one year.

**Table 5. Summary Statistics for Pending Non-Detained Case Appeals (as of Feb. 27, 2026)**

| Metric | Value |
|---|---|
| Pending cases | 181,972 |
| Mean days awaiting decision | 740.6 days (just over 2 years) |
| Median days awaiting decision | 452 days (about 1 year and 3 months) |
| 25th percentile | 206 days |
| 75th percentile | 1,158 days |
| 90th percentile | 1,947 days |
| 95th percentile | 2,205 days (just over 6 years) |
| Oldest pending case | 2,613 days (about 7 years and 2 months) |

Key point: Pending non-detained appeals were also deeply aged: the median case had already been waiting 452 days, the 95th percentile reached 2,205 days, and the oldest pending case had been awaiting decision for 2,613 days.

**Table 6. Age Distribution for Pending Non-Detained Case Appeals (as of Feb. 27, 2026)**

| Age Bucket | Cases | Percent of Pending |
|---|---|---|
| < 90 days | 20,503 | 11.3% |
| 90 - 180 days | 19,377 | 10.6% |
| 181 days - 1 year | 41,195 | 22.6% |
| 1 - 1.5 years | 18,870 | 10.4% |
| 1.5 - 2 years | 12,735 | 7.0% |
| 2 - 3 years | 20,348 | 11.2% |
| 3 - 4 years | 17,850 | 9.8% |
| 4+ years | 31,094 | 17.1% |
| **Total** | **181,972** | **100.0%** |

Key point: A substantial share of pending non-detained appeals had already been waiting more than two years (38.1%), and 17.1% had been pending for more than four years.

# Exhibit C. BIA Non-Detained Case Appeals: 2024-2025 Cohort, Outcome, and Timing Tables

These exhibit tables summarize year-over-year changes between 2024 and 2025 and the timing patterns of decisions issued in 2025 in non-detained BIA case appeals using the Deportation Data Project's processed EOIR data. Tables 1-3 address docket composition and recency; Tables 4-7 address outcome mix and decision-code patterns in same-year cohorts, full decision-year comparisons, and adverse 2025 filing cohorts; and Tables 8-9 address processing-time patterns based on outcome.

## I. Docket Composition and Recency Shift

### Table 1. Year-over-Year Filing Cohort Comparison for Non-Detained Case Appeals Decided in 2024 and 2025

| Filing Year | 2024 Decisions | Share of 2024 Decisions | 2025 Decisions | Share of 2025 Decisions |
|---|---|---|---|---|
| 2019 | 4,840 | 21.1% | 805 | 4.2% |
| 2020 | 1,733 | 7.6% | 3,319 | 17.5% |
| 2021 | 1,749 | 7.6% | 1,652 | 8.7% |
| 2022 | 4,219 | 18.4% | 1,983 | 10.4% |
| 2023 | 5,485 | 23.9% | 1,695 | 8.9% |
| **2024** | **4,888** | **21.3%** | 3,717 | 19.6% |
| **2025** | 0 | 0.0% | **5,806** | **30.6%** |

Key point: The 2025 docket was more recency-weighted than the 2024 docket: appeals filed in 2025 accounted for 30.6% of decisions issued in 2025, compared with 21.3% for 2024-filed appeals among decisions issued in 2024.

*Note: This table compares the filing-year composition of all non-detained case appeals decided in 2024 with those decided in 2025. Rows for 2017 and 2018 are omitted as de minimis.*

### Table 2. Share of Non-Detained Case Appeals Filed Within 12 Months Before Decision

| Decision Year | Total Decisions | Filed Within Prior 12 Months | Share Within Prior 12 Months |
|---|---|---|---|
| 2024 | 22,930 | 8,737 | 38.1% |
| 2025 | 18,999 | 8,746 | 46.0% |

Key point: The share of decisions involving appeals filed within the prior 12 months increased from 38.1% in 2024 to 46.0% in 2025. These were also the highest shares observed in the 2019–2025 series.

*Note: For each decision year, this measure reflects the share of appeals decided in that year that were filed within 365 days before the BIA decision date. This rolling measure provides a calendar-neutral way to assess recency. The increase from 38.1% in 2024 to 46.0% in 2025 is statistically significant (two-sample test of proportions, $p < 0.001$; 95% CI for the difference, 7.0 to 8.9 percentage points).*

### Table 3. Filing Cohort Distribution of Non-Detained Case Appeals Decided in 2025, with Pending Counts

| Filing Year | Decided in 2025 | Share of 2025 Decisions | Still Pending (Feb. 27, 2026) |
|---|---|---|---|
| 2019 | 805 | 4.2% | 5,652 |
| 2020 | 3,319 | 17.5% | 14,505 |
| 2021 | 1,652 | 8.7% | 9,164 |
| 2022 | 1,983 | 10.4% | 16,406 |
| 2023 | 1,695 | 8.9% | 20,482 |
| 2024 | 3,717 | 19.6% | 27,776 |
| 2025 | 5,806 | **30.6%** | 74,081 |
| 2026 | 0 | 0.0% | 13,906 |

Key point: The largest share of non-detained case appeals decided in 2025 came from cases filed in 2025 itself (30.6%), while older cohorts remained pending in substantial numbers as of February 27, 2026.

*Note: This table displays filing-year cohorts for non-detained case appeals decided in 2025, together with still-pending counts measured as of February 27, 2026. Rows for 2017 and 2018 are omitted as de minimis; the 2026 row reflects appeals filed by February 27, 2026 that remained pending as of that date.*

## II. Outcome Mix and Decision-Code Patterns

### Table 4. Outcome Mix for Non-Detained Case Appeals Filed and Decided in the Same Year (2024 vs. 2025)

| Outcome Category | 2024 Count | 2024 Share | 2025 Count | 2025 Share | Change (pp) |
|---|---|---|---|---|---|
| Procedural Dismissal | 1,457 | 29.8% | 2,767 | 47.7% | **+17.9** |
| Substantive Adverse | 2,922 | 59.8% | 2,517 | 43.4% | -16.4 |
| Admin / Withdrawal | 87 | 1.8% | 317 | 5.5% | +3.7 |
| Remand | 369 | 7.5% | 196 | 3.4% | -4.1 |
| Favorable Merits | 8 | 0.2% | 0 | 0.0% | -0.2 |
| Favorable Non-Merits | 45 | 0.9% | 9 | 0.2% | -0.7 |

Key point: Among same-year cohorts, procedural dismissals rose from 29.8% in 2024 to 47.7% in 2025 (up 17.9 points; 95% CI, 16.0 to 19.7; Holm-adjusted $p < 0.001$), while substantive adverse outcomes fell from 59.8% to 43.4%. In the 2025 same-year cohort, 96.6% of cases ended in procedural dismissal, substantive adverse, or administrative/withdrawal dispositions, and favorable outcomes were nearly nonexistent.

*Note: This table compares the disposition mix of non-detained case appeals filed and decided in the same year. The 2024 same-year cohort includes 4,888 cases; the 2025 same-year cohort includes 5,806 cases. Percentages may not sum to exactly 100.0% due to rounding. The overall outcome distribution differs significantly between the 2024 and 2025 same-year cohorts (Pearson's chi-squared test, $p < 0.001$).*

## Table 5. Outcome Mix for Non-Detained Case Appeals Decided in 2024 and 2025, Regardless of Filing Year

| Outcome Category | 2024 Count | 2024 Share | 2025 Count | 2025 Share | Change (pp) |
|---|---|---|---|---|---|
| Procedural Dismissal | 3,466 | 15.1% | 4,447 | **23.4%** | **+8.3** |
| Substantive Adverse | 14,675 | 64.0% | 10,485 | 55.2% | -8.8 |
| Admin / Withdrawal | 433 | 1.9% | 738 | 3.9% | +2.0 |
| Remand | 2,708 | 11.8% | 2,722 | 14.3% | +2.5 |
| Favorable Merits | 22 | 0.1% | 19 | 0.1% | +0.0 |
| Favorable Non-Merits | 1,626 | 7.1% | 588 | 3.1% | -4.0 |

Key point: Across all non-detained case appeals decided in 2024 and 2025, regardless of filing year, procedural dismissals increased from 15.1% to 23.4% (up 8.3 points; 95% CI, 7.5 to 9.1; Holm-adjusted $p < 0.001$), substantive adverse outcomes fell from 64.0% to 55.2%, and remands rose from 11.8% to 14.3%.

*Note: The overall 2024-2025 outcome distribution differs significantly (Pearson's chi-squared test, $p < 0.001$). Changes in most categories are also statistically significant (two-sample proportion tests; Holm-adjusted $p < 0.001$). The increase in remands in the full 2025 decision-year docket appears to be substantially influenced by filer mix. Separate analysis shows that DHS-filed appeals in 2025 were far more remand-heavy than noncitizen-filed appeals. Exh. D (Remand Patterns by Filer Type).*

## Table 6. Decision-Code Comparison for All Non-Detained Case Appeals Decided in 2024 vs. 2025, Regardless of Filing Year

| BIA Decision Code | Description | 2024 Count | 2024 Share | 2025 Count | 2025 Share | Change (pp) |
|---|---|---|---|---|---|---|
| DIS | Dismiss appeal / affirm IJ decision | 12,924 | **56.4%** | 9,281 | **48.8%** | **-7.6** |
| SDG | Summary dismissal - untimely or waived | 819 | **3.6%** | 1,662 | **8.7%** | **+5.1** |
| SUD | Summarily dismissed | 1,326 | **5.8%** | 1,750 | **9.2%** | **+3.4** |
| SED | Summary dismissal - no brief filed | 1,262 | 5.5% | 949 | 5.0% | -0.5 |
| SAF | Summary affirmance | 1,291 | 5.6% | 882 | 4.6% | -1.0 |
| WDL | Withdrawal of appeal | 433 | 1.9% | 738 | 3.9% | +2.0 |
| WPD | Withdrawal due to voluntary departure | 39 | 0.2% | 29 | 0.2% | +0.0 |
| REM | Remand | 2,415 | 10.5% | 2,540 | 13.4% | +2.9 |
| ACR | Returned to court to correct deficiency | 293 | 1.3% | 168 | 0.9% | -0.4 |
| NJU | Lacks jurisdiction | 59 | 0.3% | 86 | 0.5% | +0.2 |

Key point: The full decision-year shift was driven primarily by increased use of summary/procedural dismissal codes, especially SDG and SUD, rather than by an increase in DIS-coded decisions.

*Note: Shares are calculated out of all non-detained case appeals decided in the indicated year, not only the displayed codes. The displayed codes account for 20,861 of 22,930 decisions in 2024 and 18,085 of 18,999 decisions in 2025. The DIS code may include both full merits decisions and streamlined affirmances; the data do not allow a further distinction within that category.*

### Table 7. Procedural vs. Substantive Adverse Outcomes by Filing Cohort Among Non-Detained Case Appeals Decided in 2025

| Filing Year | Substantive Adverse | Procedural Dismissal | % Procedural |
|---|---|---|---|
| 2019 | 625 | 31 | 4.7% |
| 2020 | 2,564 | 298 | 10.4% |
| 2021 | 1,236 | 93 | 7.0% |
| 2022 | 1,239 | 157 | 11.2% |
| 2023 | 494 | 98 | 16.6% |
| **2024** | 1,795 | 1,000 | **35.8%** |
| **2025** | 2,517 | 2,767 | **52.4%** |

Key point: Among adverse non-detained case appeals decided in 2025, 35.8% of adverse 2024-filing decisions and 52.4% of adverse 2025-filing decisions were procedural rather than substantive. This pattern is consistent with more procedural resolution in newer cohorts, though older cohorts consist only of cases that remained unresolved into 2025 and may have had a different procedural/substantive mix in earlier decision years.

*Note: The denominator for % Procedural is Procedural Dismissal plus Substantive Adverse among non-detained case appeals decided in 2025 for the indicated filing cohort. Rows for pre-2019 filing years are omitted as de minimis.*

## III. Timing and Outcome Selection

### Table 8. Median Processing Time by Outcome Category for Non-Detained Case Appeals Decided in 2025

| Outcome Category | Count | Median Processing Time (Days) | Mean Processing Time (Days) | 25th Percentile | 75th Percentile |
|---|---|---|---|---|---|
| Procedural Dismissal | 4,447 | 182.0 | 373.0 | 113.0 | 300.5 |
| Substantive Adverse | 10,485 | 1009.0 | 994.1 | 172.0 | 1782.0 |
| Admin / Withdrawal | 738 | 209.0 | 408.2 | 91.0 | 639.0 |
| Remand | 2,722 | 791.0 | 904.1 | 507.2 | 1193.2 |
| Favorable Merits | 19 | 1235.0 | 1540.8 | 1065.5 | 2105.5 |
| Favorable Non-Merits | 588 | 1163.5 | 1181.9 | 883.2 | 1549.0 |

Key point: Timing was strongly outcome-linked in 2025: procedural dismissals had a median processing time of 182 days, compared with 791 days for remands, 1,009 days for substantive adverse outcomes, 1,235 days for favorable merits outcomes, and 1,163.5 days for favorable non-merits outcomes.

*Note: This table uses all non-detained case appeals decided in 2025, regardless of filing year. It therefore captures both recently filed appeals and long-running appeals resolved in 2025.*

**Table 9. Outcome Mix by Processing-Time Bucket for Non-Detained Case Appeals Decided in 2025**

| Processing-Time Bucket | Procedural Dismissal | Substantive Adverse | Admin / Withdrawal | Remand | Favorable Merits | Favorable Non-Merits | n |
|---|---|---|---|---|---|---|---|
| < 90 days | 75.3% | 1.4% | 18.6% | 3.5% | 0.0% | 1.1% | 960 |
| 90 - 180 days | 31.7% | 61.6% | 3.3% | 3.2% | 0.0% | 0.2% | 4,686 |
| 181 - 364 days | 45.6% | 41.3% | 4.6% | 7.9% | 0.0% | 0.6% | 3,097 |
| 1 - 2 years | 11.3% | 22.2% | 8.0% | 54.5% | 0.0% | 4.0% | 1,458 |
| 2 - 4 years | 7.5% | 55.6% | 3.0% | 25.6% | 0.3% | 8.1% | 3,885 |
| 4+ years | 7.5% | 77.8% | 0.7% | 10.2% | 0.2% | 3.6% | 4,913 |

Key point: The very fastest 2025 decisions were overwhelmingly procedural or administrative, remands concentrated in the 1-2 year bucket, and substantive adverse outcomes predominated among the 2-4 year and 4+ year buckets.

*Note: Percentages are row percentages and may not total 100.0% in every row because of rounding. The bucket counts sum to 18,999 cases with assignable processing-time buckets.*

# Exhibit D. BIA Non-Detained Case Appeals: Remand Patterns by Filer Type

These exhibit tables summarize remand patterns in non-detained BIA case appeals by filer type. Table 1 compares 2024 and 2025 decision-year remand rates for noncitizen-filed and DHS-filed appeals, including percentage-point change. Table 2 provides supplementary outcome-mix context by filer type for decisions issued in 2024 and 2025. Table 3 shows the filing-year composition of appeals decided in 2024 and 2025, by filer type. Table 4 provides a longer-run descriptive context for decision years 2019 through 2025, with a caution that the DHS series is more volatile because DHS-filed appeals represent a smaller and more compositionally variable share of the docket.

## I. Remand Patterns by Filer Type, 2024 vs. 2025

### Table 1. Remand Rate by Filer Type for Non-Detained Case Appeals Decided in 2024 and 2025

| Filer Type | 2024 Total Decisions | 2024 Remand Count | 2024 Remand Rate | 2025 Total Decisions | 2025 Remand Count | 2025 Remand Rate | Change (pp) |
|---|---|---|---|---|---|---|---|
| Noncitizen | 22,284 | 2,359 | 10.6% | 16,965 | 1,051 | 6.2% | -4.4 |
| Government (DHS) | 630 | 337 | 53.5% | 2,016 | 1,658 | 82.2% | +28.7 |
| Both | 12 | 10 | 83.3% | 15 | 11 | 73.3% | -10 |

Key point: Remand patterns differed sharply by who filed the appeal. Among noncitizen-filed non-detained case appeals, the remand rate fell by 4.4 percentage points (95% CI, -4.9 to -3.8; $p < 0.001$), from 10.6% in 2024 to 6.2% in 2025. Among DHS-filed appeals, by contrast, the remand rate rose by 28.7 points (95% CI, 24.5 to 33; $p < 0.001$), from 53.5% to 82.2%.

*Note: This table uses a decision-year sample of non-detained case appeals decided in 2024 and 2025, without imposing a lower bound on appeal filing date. The denominator for the remand rate is the total number of appeals decided in the indicated year for the specified filer type. The "Other" filer category is omitted because it was de minimis, comprising only 7 decided appeals across 2024 and 2025 combined. Two-sample tests of proportions indicate that the 2024-to-2025 changes in remand rates within noncitizen-filed and DHS-filed appeals were statistically significant ($p < 0.001$). A case-level logistic regression further indicates that the year-over-year change in remand rates differed significantly between noncitizen-filed and DHS-filed appeals (interaction $p < 0.001$). As a robustness check, limiting the analysis to standard REM-code remands only produced the same directional pattern; ACR and BCR comprised only small shares of remands in these years.*

## II. Supplementary Outcome-Mix Context, 2024 and 2025

### Table 2. Outcome Mix by Filer Type for Non-Detained Case Appeals Decided in 2024 and 2025

| Decision Year | Filer Type | Procedural Dismissal | Substantive Adverse | Admin / Withdrawal | Remand | Favorable Merits | Favorable Non-Merits |
|---|---|---|---|---|---|---|---|
| 2024 | Noncitizen | 15.4% | 65.7% | 1.3% | 10.6% | 0.0% | 7.0% |
| 2024 | Government (DHS) | 5.6% | 4.0% | 24.1% | 53.5% | 3.3% | 9.5% |
| 2025 | Noncitizen | 26.0% | 61.3% | 3.3% | 6.2% | 0.0% | 3.2% |
| 2025 | Government (DHS) | 1.8% | 3.8% | 8.7% | 82.2% | 0.8% | 2.6% |

Key point: The overall outcome mix differed sharply by filer type. In both years, noncitizen-filed appeals were dominated by substantive adverse and procedural dismissal outcomes, while DHS-filed appeals were much more remand-heavy—especially in 2025, when 82.2% of DHS-filed appeals resulted in remand.

*Note: Percentages are row percentages within filer type and decision year: the denominator for each percentage is the total number of non-detained case appeals decided in that year for the specified filer type. Each percentage therefore represents the share of those decided appeals falling into the indicated outcome category. Shares may not total exactly 100.0% because of rounding. Favorable merits outcomes among noncitizen-filed appeals rounded to 0.0% in both 2024 and 2025. The "Both" and "Other" filer categories are omitted from this table because they were de minimis in both years and would yield percentages based on very small denominators.*

## III. Filing-Year Composition of 2024 and 2025 Decisions, by Filer Type

### Table 3. Filing-Year Composition of Non-Detained Case Appeals Decided in 2024 and 2025, by Filer Type

| Decision Year | Filer Type | 2019 Filed Share | 2020 Filed Share | 2021 Filed Share | 2022 Filed Share | 2023 Filed Share | 2024 Filed Share | 2025 Filed Share |
|---|---|---|---|---|---|---|---|---|
| 2024 | Noncitizen | 21.4% | 7.6% | 7.5% | 18.4% | 23.6% | 21.4% | - |
| 2024 | Government (DHS) | 11.7% | 4.9% | 11.4% | 16.8% | 37.1% | 17.6% | - |
| 2025 | Noncitizen | 4.6% | 19.3% | 9.1% | 10.6% | 4.9% | 18.1% | 33.2% |
| 2025 | Government (DHS) | 0.8% | 1.5% | 5.5% | 9.1% | 42.6% | 32.0% | 8.3% |

Key point: The 2025 DHS remand-heavy pattern was driven primarily by appeals filed in 2023 and 2024 rather than by same-year 2025 filings. By contrast, noncitizen-filed appeals decided in 2025 were more broadly distributed across filing cohorts and included a much larger same-year 2025 share.

*Note: Percentages are row percentages within filer type and decision year. This table is descriptive and uses the same decision-year sample as Table 1. The filing-cohort mix shown here is consistent with the remand-heavy DHS pattern observed in 2025. The "Both" and "Other" filer categories are omitted from this table because they were de minimis in both years.*

## IV. Longer-Run Decision-Year Context

**Table 4. Remand Rate by Filer Type for Non-Detained Case Appeals Decided in 2019–2025**

| Decision Year | Noncitizen Remand Rate | Government (DHS) Remand Rate |
|---|---|---|
| 2019 | 8.2% | 83.9% |
| 2020 | 6.5% | 97.6% |
| 2021 | 14.5% | 70.2% |
| 2022 | 22.1% | 38.7% |
| 2023 | 12.6% | 57.0% |
| 2024 | 10.6% | 53.5% |
| 2025 | 6.2% | 82.2% |

Key point: The longer-run decision-year series shows a general decline in remand rates for noncitizen-filed appeals after 2022, while DHS-filed appeals remained consistently much more remand-heavy, with larger year-to-year swings in annual remand rates.

*Note: This table is descriptive context only. Detailed 2024 and 2025 counts appear in Table 1. Annual DHS remand rates should be interpreted cautiously because DHS-filed appeals represent a smaller and more compositionally variable share of the docket than noncitizen-filed appeals, which can produce larger year-to-year swings in DHS remand percentages. DHS-filed appeals were also substantially more remand-heavy than noncitizen-filed appeals in both 2024 and 2025, as shown in Tables 1 and 2. "Both" and "Other" filer categories are omitted because annual counts were de minimis across 2019–2025. The longer-run series is based on decision year rather than filing cohort and may therefore reflect cohort-specific clearance patterns. For example, the 2020 DHS spike appears to coincide with an unusually large cohort of DHS-filed appeals decided that year.*

# Exhibit E. Outcome Category Mapping for Non-Detained BIA Case Appeals

This appendix summarizes the code-to-category mapping used for the outcome analysis. "Favorable Non-Merits" captures dispositions that are non-adverse in practical effect but are not merits grants. Remand is treated as a separate category because it returns the case for further proceedings and does not map cleanly onto a simple favorable/unfavorable framework.

| Outcome Category | Included BIA Decision Codes |
|---|---|
| **Procedural Dismissal** | **SUD** — Summarily Dismissed<br>**SED** — Summary Dismissal—No Brief Filed<br>**SDG** — Summary Dismissal—Untimely or Waived Appeal<br>**NJU** — Lacks Jurisdiction<br>**DUT** — Dismiss as Untimely<br>**REJ** — Rejection |
| **Admin / Withdrawal** | **WDL** — Withdrawal of Appeal<br>**CON** — Continued<br>**OTH** — Other |
| **Substantive Adverse** | **DIS**[1] — Dismiss Appeal / Affirm IJ's Decision<br>**SAF** — Summary Affirmance<br>**SAV** — Summary Affirmance / Voluntary Departure<br>**DVD** — Dismissed (Voluntary Departure Granted)<br>**BVD** — BIA Grants Voluntary Departure<br>**D30** — Dismissed (Grant Voluntary Departure, 30 Days)<br>**CFD** — Final Denial of EOIR 42B/40<br>**CFV** — Final Denial of EOIR 42B/40 with Voluntary Departure |
| **Remand** | **REM** — Remand<br>**BCR** — Background Check Remand<br>**ACR** — ROP Returned to Court to Correct Deficiency |
| **Favorable Merits** | **GNR** — Grant with No Remand<br>**GRN** — Granted<br>**CFG** — Final Grant of EOIR 42B/40<br>**CGR** — Conditional Grant of Relief<br>**SUS** — Sustain |
| **Favorable Non-Merits** | **TPS** — Temporary Protected Status<br>**TER**[2] — Termination<br>**TPD** — Terminate — DHS Prosecutorial Discretion<br>**ADM** — Administratively Closed<br>**APD** — Administratively Closed—DHS Prosecutorial Discretion<br>**CTM** — Administratively Closed Other Than ABC<br>**WPD** — Withdrawal—DHS Prosecutorial Discretion |

*Note:* Residual codes not assigned to these analytic categories, if any, were treated as Other / Unmapped and were not material to the declaration tables.

[1] The DIS code may include both full merits decisions and streamlined affirmances; the data do not allow a further distinction within that category.
[2] Termination dispositions are not always favorable to the noncitizen. Some may occur at the government's request to move the case into expedited removal, reinstate a prior removal order, or pursue another procedural path. The data do not permit finer distinctions among termination dispositions.