STATE OF MINNESOTA

COUNTY OF RAMSEY

**DECLARATION OF RYAN R. WOOD**

I, Ryan R. Wood, do state and affirm the following under penalty of perjury:

1. My name is Ryan R. Wood. I am an immigration attorney licensed to practice in the State of Minnesota since 2004. I am currently the Principal Founding Partner of Emeriti.Law PLLC, a national immigration law firm headquartered in St. Paul, Minnesota.

2. Prior to founding Emeriti.Law PLLC, I served six years as an Assistant Chief Immigration Judge ("ACIJ") managing the Ft. Snelling, Minnesota Immigration Court and overseeing immigration court operations across the Midwest region (Fort Snelling, Cleveland, Detroit, and Kansas City). I directed the judicial and administrative functions for high-volume courts, supervised 20 Immigration Judges and more than 80 court staff, and ensured consistent adjudicative standards across diverse dockets. I retired from the Executive Office for Immigration Review ("EOIR") in July 2025.

3. Before my promotion to ACIJ, I served as an Immigration Judge at the Ft. Snelling Immigration Court from April 2017 to March 2019, where I specialized in the detained docket. As an Immigration Judge, I presided over formal removal proceedings pursuant to section 240 of the Immigration and Nationality Act, adjudicated issues of removability and eligibility for relief or protection from removal, ruled on motions and objections, and issued oral and written decisions supported by findings of fact and conclusions of law.

4. Before my judicial service, I worked as a Special Assistant United States Attorney in the U.S. Attorney's Office for the District of Minnesota and, prior to that, as an Assistant Chief Counsel and Acting Deputy Chief Counsel at the Department of Homeland Security, Immigration and Customs Enforcement, Office of Principal Legal Advisor. My full professional background is set forth in the curriculum vitae attached as Exhibit A.

5. During my tenure as ACIJ from 2019 to 2025, I served as one of EOIR's most prolific and versatile judicial trainers. I delivered over 200 hours of formal legal instruction across more than 40 national training sessions, representing approximately 10 percent of EOIR's total annual judicial training during that period. I was a member of EOIR's Legal Education and Research Services Division ("LERS") Training Committee and advised on training needs across the agency.

6. I presented at New Immigration Judge Training ("NIJT") classes during nearly every NIJT cycle from 2019 through 2025, with limited exceptions. In that capacity, I delivered instruction to hundreds of newly appointed Immigration Judges on foundational subjects including the role and authority of the Immigration Judge, removability, alienage and claims of U.S. citizenship, criminal immigration issues, adjustment of status, and the components and structure of a judicial decision. Among the many classes that I led, I taught "The Role of Immigration Court," "Professionalism," and "Overview of EOIR and the U.S. Immigration System." My NIJT instruction also addressed judicial conduct and professionalism, including

the independence of adjudicators within EOIR, fundamental fairness, and the relationship between perception and reality in maintaining judicial integrity and impartiality. New Board members attended NIJT as part of their onboarding, and accordingly received this instruction alongside newly appointed Immigration Judges.

7. I also taught regularly at the Advanced Immigration Judge Training program, which addresses advanced issues for experienced Immigration Judges. Among the topics I taught in those classes was Judicial Conduct and Professionalism, which again implicates the independence of adjudicators and the standards governing recusal.

8. A core component of my training portfolio addressed professionalism, judicial conduct, and the standards governing recusal and disqualification. I taught these subjects to hundreds of Immigration Judges, to Assistant Chief Immigration Judges, and to Board of Immigration Appeals ("Board" or "BIA") members who were onboarded during my tenure. I trained members of senior EOIR leadership during their onboarding, including former Chief Immigration Judges and former Board Chairs. My instruction covered Canon 3(C) of the American Bar Association Model Code of Judicial Conduct, 28 U.S.C. § 455, the EOIR Ethics Manual for Members of the Board of Immigration Appeals, Immigration Judges, and Administrative Law Judges, and EOIR Operating Policies and Procedures Memorandum 05-02, "Procedures For Issuing Recusal Orders In Immigration Proceedings" (March 21, 2005) ("OPPM 05-02"), attached as Exhibit B. OPPM 05-02 by its terms governs recusal by Immigration Judges; Board members are familiar with its framework because they receive the same foundational instruction during their onboarding, but their recusal practice is governed by the standards set forth in the BIA Practice Manual, as discussed below.

9. My training experience on these subjects is complemented by direct, hands-on experience addressing recusal and disqualification questions as both a sitting Immigration Judge and as a supervising ACIJ. As a sitting judge, I navigated recusal questions in cases presenting difficult factual scenarios, including circumstances in which I coordinated with EOIR's Office of the General Counsel and EOIR's ethics counsel to ensure that any recusal decision was properly grounded. As an ACIJ, I supervised Immigration Judges across four immigration courts and routinely advised judges who came to me with potential recusal issues. In one matter, for example, a judge on my court was the subject of a physical threat by a respondent whose case I had previously prosecuted; that combination of circumstances required a careful, coordinated approach involving a change of venue from Minnesota to Cleveland. In other matters, I counseled judges against recusing themselves where the proposed basis did not satisfy the governing standard. In short, I have taught these standards, applied them as a judge, and supervised their application across multiple courts.

10. The duty of impartiality is foundational to the work of every Immigration Judge and Board member. EOIR adjudicators are bound by professional standards that mirror Canon 3(C) of the American Bar Association Model Code of Judicial Conduct and the federal disqualification statute, 28 U.S.C. § 455. See EOIR Ethics Manual for Members of the Board of Immigration Appeals, Immigration Judges, and Administrative Law Judges (recognizing that immigration adjudicators should "aspire" to the standards reflected in the ABA Code).

11. The Board set out basic rules governing recusal in immigration proceedings in *Matter of Exame*, 18 I&N Dec. 303 (BIA 1982). There, the Board explained that recusal may be warranted where the respondent is denied a constitutionally fair proceeding, where the adjudicator has a personal, rather than judicial, bias stemming from an "extrajudicial" source, or where otherwise judicial conduct demonstrates "such pervasive bias and prejudice . . . as would constitute bias against a party." Id. at 305–06. *Exame* remains an important BIA authority on the substantive grounds for immigration-judge recusal and continues to be cited by courts addressing recusal in immigration proceedings.

12. OPPM 05-02 is the authoritative agency guidance governing recusal by Immigration Judges in immigration proceedings. It reflects the framework I have taught to Immigration Judges, and to Board members during their onboarding, for the last six years. Under that framework, recusal by an Immigration Judge is governed by an objective standard: the Immigration Judge should recuse himself or herself "when it would appear to a reasonable person, knowing all the relevant facts, that a judge's impartiality might reasonably be questioned." OPPM 05-02 at 4 (citing *Liteky v. United States*, 510 U.S. 540 (1994); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)). The obligation to identify grounds for recusal is sua sponte; it does not depend on a motion by a party. *Liteky*, 510 U.S. at 548.

13. Certain circumstances require mandatory disqualification. Under 28 U.S.C. § 455(b), and in parallel under Canon 3(C) of the ABA Model Code, an adjudicator must disqualify himself or herself where he or she has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts; where he or she previously served as a lawyer in the matter or as a material witness; where he or she has served in governmental employment and in that capacity "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy"; where he or she has a disqualifying financial interest; or where a spouse or close family member is a party, an attorney in the matter, or otherwise has a substantial interest in the proceeding. See 28 U.S.C. § 455(b)(1)–(5); ABA Model Code of Judicial Conduct R. 2.11(A); formerly Canon 3(C)(1).[1] These enumerated § 455(b) grounds are mandatory and, unlike the reasonable-person standard in § 455(a), are non-waivable. See 28 U.S.C. § 455(e); OPPM 05-02 at 5–6.

14. Recusal is not, however, a discretionary tool that judges may invoke to avoid difficult or controversial cases. As OPPM 05-02 makes clear, "judges have an obligation not to recuse themselves in certain circumstances." OPPM 05-02 at 3 (citing *Laird v. Tatum*, 409 U.S. 824, 837 (1972) ("a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified")). The "duty to sit" doctrine is a central feature of the training I have delivered to Immigration Judges and Board members: an adjudicator who recuses without a proper, compelling basis does as much harm to the integrity of the system as an adjudicator who fails to recuse when required. See OPPM 05-02 at 6 ("[J]udges faced with a possible recusal situation must go through an extensive analysis of the surrounding circumstances prior to issuing any decision on the matter. Moreover, such decisions must be

---

[1] The disqualification standards described above appeared in earlier versions of the ABA Model Code of Judicial Conduct as Canon 3(C) (1972) and Canon 3(E)(1) (1990). OPPM 05-02 references the 1990 framework. See OPPM 05-02 at 2 n.3. In the 2007 revision of the Model Code, these standards were recodified at Rule 2.11. References in this declaration to "Canon 3(C)" reflect the language carried forward in the EOIR Ethics Manual and the historical framework taught to Immigration Judges.

predicated on compelling evidence rather than mere allegations or conclusory facts." (citing *United States v. Balistrieri*, 779 F.2d 1191, 1220 (7th Cir. 1985))).

15. OPPM 05-02 also imposes a procedural requirement that I have taught to new Immigration Judge classes during my tenure: any recusal must be made on the record or in writing, supported by specific reasons, and accompanied by a "well-reasoned opinion explaining the circumstances and legal reasoning behind either the grant or the denial of the recusal." OPPM 05-02 at 7. The only exception to the written-reasoning requirement is where the adjudicator had a prior role in the case as a DHS attorney or private attorney; in that narrow circumstance, the order may simply state that fact. Id.

16. Recusal at the Board level is governed by a different and more discretionary standard. The BIA Practice Manual provides that "Board Members may recuse themselves under any circumstances considered sufficient to require such action." BIA Practice Manual, ch. 1.3. The EOIR Ethics Manual, which is expressly addressed to "Members of the Board of Immigration Appeals, Immigration Judges, and Administrative Law Judges," continues to inform Board recusal decisions, as does the Board's own foundational treatment of recusal grounds in *Matter of Exame*. But the operative governing standard for a Board member — unlike the objective reasonable-person test that binds Immigration Judges under OPPM 05-02 — is the broader "circumstances considered sufficient" standard set forth in the BIA Practice Manual.

17. I have been asked to provide my opinion regarding public reporting that at least three Board members recused themselves from *Matter of M-K-*, the precedent decision issued April 9, 2026, dismissing the respondent's appeal and denying his motion to remand. See Jonah E. Bromwich & Nicholas Nehamas, Mahmoud Khalil Hurtles Toward Potential Deportation as U.S. Speeds Case, N.Y. Times (May 8, 2026). The reasons for those recusals are not publicly disclosed. I have not reviewed the case file, the internal Board records, or any non-public information concerning the recusals. My opinion is therefore directed to the framework governing recusal at the Board, the standards I have taught to Board members on that framework, and the inferences that may reasonably be drawn from the public fact of three recusals in a single matter.

18. Based on my training experience, my supervisory experience, and the standards set forth above, three recusals from a single Board case appears highly unusual. Even under the discretionary "circumstances considered sufficient" standard that governs Board members, recusal is the exception, not the rule. In my experience training and observing Board members, recusal decisions are made carefully and sparingly; mere prior service at EOIR, prior service at OCIJ during a period that overlapped with the Immigration Judge who heard the underlying case, or general familiarity with the legal issues presented in a case is not, in ordinary practice, treated as a sufficient circumstance. If such overlap or familiarity were routinely treated as sufficient, recusals would be commonplace across the Board's docket; they are not. Many Board members previously served as Immigration Judges, as OCIJ leadership, as DHS attorneys, or in other EOIR or DOJ roles, and they regularly adjudicate appeals from courts and cases with which they have institutional familiarity.

19. The substantive grounds that warrant recusal under the federal framework that informs immigration adjudication are specific: personal involvement as counsel or adviser in the matter in controversy; expressing an opinion concerning the merits of the particular case while in government employment; personal bias or prejudice concerning a party; personal knowledge of disputed evidentiary facts; or a financial or family interest. See 28 U.S.C. § 455; OPPM 05-02 at 5–6; ABA Model Code of Judicial Conduct R. 2.11(A); formerly Canon 3(C)(1). While the objective reasonable-person test does not formally bind Board members, the grounds enumerated above remain the recognized substantive bases on which a careful adjudicator — whether an Immigration Judge or a Board member — would conclude that circumstances are sufficient to require recusal.

20. The fact that three separate Board members independently concluded that recusal was warranted in *Matter of M-K-* strongly suggests that each of those members determined, in the exercise of his or her own judgment, that one or more substantive circumstances applied. Three concurrent recusals are not consistent with routine institutional familiarity or with the ordinary, sparing exercise of Board recusal discretion. They are consistent with each recusing member's independent conclusion that his or her involvement with the matter, or with the parties or issues in the matter, rose to a level sufficient to require recusal under the standard set forth in the BIA Practice Manual. In my professional opinion, three recusals from a single Board case strongly suggests significant prior involvement of those members with the case before it reached the Board.

21. I emphasize the limits of my opinion. I do not know which Board members recused, the reasons stated in their recusal orders, or the underlying facts that gave rise to the recusals. My opinion is that, applying the framework I have taught to Board members and Immigration Judges over the past six years, and against the backdrop of the discretionary standard governing Board recusal, three recusals in a single case appears to be a substantial departure from the ordinary course and indicates that each recusing member concluded that circumstances sufficient to require recusal were present as to him or her.

22. My curriculum vitae is attached as Exhibit A. EOIR Operating Policies and Procedures Memorandum 05-02 is attached as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2026.

May 14, 2026

*Signature* *Date*

# RYAN R. WOOD

444 CEDAR STREET | SUITE 1150 | SAINT PAUL, MN 55101 | 612-224-2888 | RYAN.WOOD@EMERITI.LAW

## EXECUTIVE SUMMARY

Immigration law expert with over 20 years of distinguished legal experience spanning military service, federal prosecution, immigration enforcement operations, judicial administration, and complex litigation. Unique perspective derived from service on both enforcement and adjudication sides of the immigration system. Designated National Security Attorney by U.S. Department of Homeland Security with Top Secret security clearance. Licensed immigration law practitioner with comprehensive understanding of ICE enforcement operations, worksite compliance, detention procedures, immigration court proceedings, removal standards, and immigration-criminal law intersection (crimmigration). Qualified to provide expert testimony and consultation on immigration enforcement practices, organizational compliance obligations, employer liability, immigration consequences of criminal conduct, and detention/habeas corpus proceedings.

## AREAS OF EXPERTISE

### Detention & Habeas Corpus

- Detention standards and procedures under INA § 235, § 236, and related statutes
- Bond hearings and bond eligibility determinations
- Habeas corpus remedies and federal court review of detention decisions
- Mandatory detention provisions and appellate standards
- Over 1,000 detained docket case resolutions; hundreds of additional detention/bond decisions as an immigration judge

### Immigration Enforcement Operations

- ICE enforcement strategy, tactics, and legal authority
- Worksite enforcement including I-9 audits, civil investigations, and arrests
- Border enforcement and expedited removal authority
- National security determinations and removal proceedings

### Worksite Compliance & Employer Liability

- I-9 completion and compliance auditing
- E-Verify status verification and reverification protocols
- Employer liability under INA § 1324(a) (knowingly hiring unauthorized workers)
- Employment discrimination compliance under INA § 1324(b)
- Organizational protocols when ICE arrives (Fourth Amendment rights, private space restrictions)
- Risk assessment for employers with diverse workforces

### Crimmigration (Criminal-Immigration Law Intersection)

- Immigration consequences of criminal conduct and arrest
- Sentencing recommendations to minimize immigration exposure
- Plea negotiation strategy in cases involving noncitizens
- Crimes of violence and aggravated felonies under INA § 1101(a)(43)

- Criminal denaturalization and citizenship consequences
- Mandatory detention provisions and DUI/offense-specific immigration consequences

### Immigration Court Proceedings & Citizenship

- Removal, deportation, exclusion, and rescission proceedings
- Asylum, withholding of removal, and Convention Against Torture protection
- Adjustment of status, waivers, and cancellation of removal
- U.S. citizenship, naturalization, and denaturalization proceedings
- Appellate review, habeas corpus remedies, and motion practice
- Mental competency determinations in immigration proceedings

### Fourth Amendment & Constitutional Rights

- Reasonableness of government searches and seizures
- Warrant requirements and warrantless authority in immigration context
- Fourth Amendment rights of individuals, organizations, and employers
- Motion practice to suppress unlawfully obtained evidence

## CURRENT POSITION

### PRINCIPAL FOUNDING PARTNER – EMERITI LAW PLLC

July 2025 to Present, Saint Paul, MN

Lead attorney and founder of national immigration law practice focused on complex case strategy, litigation support, expert consultation, and specialized representation in immigration enforcement matters. Practice areas include immigration removal proceedings and appellate litigation, federal criminal prosecution of immigration-related offenses, expert consultation on organizational immigration risks and compliance, crimmigration assessment for criminal defense attorneys and clients, litigation support and expert declaration preparation, worksite enforcement response and compliance auditing, and litigation involving immigration detention, habeas corpus, and administrative procedure. Counsel employers, organizations, and criminal practitioners on immigration enforcement risks, compliance obligations, and operational response protocols.

## JUDICIAL EXPERIENCE

### ASSISTANT CHIEF IMMIGRATION JUDGE – U.S. Immigration Court

March 2019 to July 2025, Fort Snelling, MN

Served as senior judicial manager and Assistant Chief Immigration Judge overseeing immigration court operations across the Midwest region (Fort Snelling, Cleveland, Detroit, and Kansas City). Directed all judicial and administrative functions for high-volume courts, supervised 20 Immigration Judges and more than 80 court staff, and ensured consistent adjudicative standards across diverse dockets.

### Leadership & Judicial Responsibilities:

- Exercised operational oversight for four immigration courts representing one of the largest multi-court portfolios in EOIR
- Supervised 20 Immigration Judges and 80+ administrative staff, ensuring compliance with EOIR and DOJ performance standards

- Managed combined annual case receipts exceeding 40,000 and annual completions of 15,000–20,000 cases, for a career total of 70,000+ completed cases under direct supervision
- Maintained active personal docket throughout ACIJ tenure, presiding over hundreds of complex removal, detention, and bond proceedings annually
- Issued hundreds of oral and written decisions annually in complex and high-stakes matters, including detention, bond, habeas, and asylum proceedings
- Implemented data-driven docket parity plans and performance metrics to standardize workloads across courts and improve scheduling efficiency
- Achieved record completions in FY 2022 (10,000+ cases in Cleveland, 6,000+ in Fort Snelling) while maintaining due process and reducing case backlogs
- Delivered over 180 hours of formal legal instruction across 18+ national training sessions (New IJ, Advanced IJ, Leadership Training, Mental Competency, Evidentiary Issues, Crimmigration, Asylum/Adjustment/Waivers, Naturalization), representing approximately 10% of EOIR's total annual judicial training
- Served on Immigration Judge Hiring Committee (2019–2024); reviewed 280+ applications and conducted 100+ interviews
- Served on EOIR's Pro Bono Steering Committee and Legal Training Committee, contributing recommendations on national access-to-counsel and judicial education initiatives
- Earned Outstanding performance ratings (2019–2024) from EOIR Director and Regional Deputy Chief Immigration Judge

### U.S. IMMIGRATION JUDGE – DETAINED DOCKET SPECIALIZATION

April 2017 to March 2019, Fort Snelling, MN

Served as full-time Immigration Judge specializing in detained docket matters at Fort Snelling Immigration Court. Focused exclusively on detention, and bond, proceedings for individuals in ICE custody. Resolved over 1,000 detained cases, establishing expertise in detention standards, bond eligibility determinations, habeas corpus remedies, and appellate standards for detention decisions. Developed comprehensive understanding of detention operations, custody procedures, and the intersection of criminal arrests and immigration enforcement. This specialization provided deep expertise in contemporary detention standards and procedures—critical foundation for current expert consultation on detention practices and organizational compliance with immigration enforcement protocols.

## FEDERAL PROSECUTION EXPERIENCE

### SPECIAL ASSISTANT UNITED STATES ATTORNEY

November 2014 to April 2017, Minneapolis, MN | U.S. Attorney's Office, District of Minnesota

Assigned to Major Crimes and Priority Prosecutions section. Represented United States in federal district court and before Eighth Circuit Court of Appeals. Investigated and prosecuted felony cases involving unlawful procurement of naturalization, immigration fraud, identity theft, passport fraud, illegal reentry, harboring unauthorized aliens, tax fraud, transportation of child pornography, armed bank robbery, and related federal crimes. Obtained more than 35 felony convictions including 2 jury trials. Trained more than 100 federal law enforcement officers on Fourth Amendment protections and constitutional search and seizure law. Developed expertise in sentencing recommendations that account for immigration consequences in cases involving noncitizen defendants.

## IMMIGRATION ENFORCEMENT OPERATIONS EXPERIENCE

### ASSISTANT CHIEF COUNSEL – U.S. Immigration and Customs Enforcement

October 2009 to March 2014, Bloomington, MN

Represented Department of Homeland Security in immigration proceedings. Designated by DHS headquarters as National Security Attorney with Top Secret security clearance. Served as Acting Deputy Chief Counsel. Represented ICE in removal proceedings involving national security concerns, negotiated and coordinated high-profile national security removal to Iran (recognized with DHS Special Achievement Award, September 2012). Served as trial attorney for worksite enforcement actions, I-9 audits, and civil investigations targeting unauthorized employment. Advised ICE officers and agents on legal authority for enforcement operations, detention procedures, removal authority, and warrant requirements. Trained federal law enforcement officers on Fourth Amendment protections. Participated in planning and execution of worksite enforcement operations, providing direct legal guidance on investigation procedures and enforcement tactics.

### EMBEDDED ATTORNEY – Homeland Security Investigations (HSI)

April 2014 to November 2014, Fort Snelling, MN

Served as in-house agency counsel for Homeland Security Investigations Special Agent in Charge, five-state region (Minnesota, Wisconsin, Iowa, Illinois, Missouri). Provided real-time legal guidance and litigation support on complex federal criminal investigations involving border searches, asset forfeitures, narcotics trafficking, Title III wiretap applications and surveillance compliance, human trafficking, child exploitation, cybercrime, and commercial fraud. Advised on Fourth Amendment warrant requirements, FOIA requests, and interagency agreements. Developed understanding of investigative techniques, evidence standards, and federal law enforcement procedures in immigration-related investigations.

## MILITARY SERVICE & LITIGATION EXPERIENCE

### TRIAL DEFENSE COUNSEL – U.S. Army Trial Defense Service

January 2008 to October 2009, Fort Carson, CO; Joint Base Balad, Iraq

Represented soldiers facing court-martial proceedings and administrative hearings. Twelve-month combat deployment to Iraq defending soldiers facing criminal charges across Iraq, Kuwait, and Afghanistan. Tried 2 jury cases to verdict. Litigated more than 10 contested sentencing hearings. Awarded Bronze Star Medal for exceptionally meritorious service in combat zone and U.S. Army Commendation Medal. Developed expertise in complex criminal defense litigation, cross-examination, witness impeachment, and sentence mitigation in high-stakes proceedings.

### SENIOR TRIAL COUNSEL – U.S. Army 4th Infantry Division, Judge Advocate General's Corps

June 2007 to January 2008, Fort Carson, CO

Chief litigator among six trial counsel for Army's fourth busiest courts-martial jurisdiction. Trained seven new trial counsel. Managed all military justice actions for division. Served as acting Chief of Justice. Awarded U.S. Army Commendation Medal for exceptionally meritorious service.

### TRIAL COUNSEL – U.S. Army 4th Infantry Division, Judge Advocate General's Corps

June 2006 to June 2007, Fort Carson, CO

Prosecutor for busiest and most complex military justice jurisdiction at Fort Carson. Tried 4 cases to verdict. Litigated more than 20 contested sentencing cases. Trained federal law enforcement agents on investigations and courtroom practice. Advised commanders on criminal justice and military legal issues.

### MILITARY MAGISTRATE – U.S. Army, Judge Advocate General's Corps

December 2005 to June 2006, Fort Carson, CO

Appointed Military Magistrate by Fourth U.S. Army Judicial Circuit. Held pre-trial confinement hearings for soldiers facing court-martial. Issued search authorizations and arrest warrants upon showing of probable cause.

## EDUCATION

### HAMLINE UNIVERSITY SCHOOL OF BUSINESS

Master of Business Administration, May 2015

### HAMLINE UNIVERSITY SCHOOL OF LAW

Juris Doctor, May 2004 | Law Review Editor, Hamline Law Review, 2003-2004

### HAMLINE UNIVERSITY COLLEGE OF LIBERAL ARTS

Bachelor of Arts in Political Science with Minor in Management, May 2000

## LICENSURE & PROFESSIONAL MEMBERSHIPS

- Minnesota Supreme Court - Admitted and sworn to practice, October 2004 | License Status: Active
- Federal Bar Association, Immigration Section
- American Immigration Lawyers Association (AILA)
- Volunteer, Team Rubicon Disaster Response (Level 1 Sawyer)
- Board Member, MicroGrants Nonprofit Organization (May 2024–present)

## HONORS & AWARDS

- U.S. Department of Justice, EOIR Special Commendation (2024) - exceptional docket management innovation and operational excellence
- U.S. Department of Justice, EOIR Director's Award (2023) - leadership and policy development on Pro Bono Steering Committee
- U.S. Department of Homeland Security Special Achievement Award (2012) - national security removal negotiation and coordination
- Outstanding Performance Rating (2019–2024) - highest annual evaluation from EOIR Director and Regional Deputy Chief Immigration Judge
- U.S. Army Bronze Star Medal (2009) - exceptionally meritorious service in combat zone
- U.S. Army Commendation Medal (2007 & 2009) - exceptionally meritorious service

## CONTINUING LEGAL EDUCATION & PRESENTATIONS

### Scheduled & Recent Engagements:

- AILA Minnesota Dakotas - Plenary Speaker, May 2026
- AILA Chicago Midwest Regional Conference, March 2026

- Minnesota AgriGrowth Council: Immigration Enforcement & Organizational Protocols for Agricultural Employers, November 2025
- Minnesota State Bar Association: Crimmigration Round Table, November 2025
- AILA Midsouth: Building Your Record for Appeal, October 2025
- Volunteer Lawyers Network: Immigration Proceedings and Pro Se Respondents, October 2025
- Immigrant Law Center of Minnesota: ICE Interactions & Harboring Laws – Legal Training for Immigration Practitioners, August 2025
- Washington County Law Library: Immigration Enforcement in 2025, August 2025

## EXPERT DECLARATION QUALIFICATIONS

As an expert in immigration law, enforcement operations, and immigration court proceedings, Ryan R. Wood is qualified to provide opinions, testimony, and consultation on matters including but not limited to:

- Immigration enforcement authority and operations, including DHS tactics, legal basis, and operational procedures
- Detention procedures, standards, and Bond eligibility determinations under federal immigration law
- Habeas corpus remedies and federal court review of detention decisions
- Worksite enforcement and employer compliance obligations
- Immigration consequences of criminal conduct (crimmigration analysis)
- Criminal denaturalization and citizenship consequences
- Removal proceedings, relief eligibility, and appellate standards
- U.S. citizenship, naturalization procedures, and denaturalization authority
- Fourth Amendment protections in immigration context and warrant requirements
- Organizational protocols and employer rights during immigration enforcement encounters
- Immigration consequences of specific criminal charges and plea agreements
- Standard practices in immigration court proceedings, detention operations, and appellate review

Qualifications are based on: 20+ years of distinguished legal experience; service in federal prosecution, immigration enforcement operations, and federal judiciary; 1,000+ detained docket case resolutions as specialized judge; continued detention/bond expertise during six years as judicial administrator; designation as National Security Attorney by DHS with Top Secret security clearance; comprehensive understanding of immigration law from enforcement, prosecution, and adjudication perspectives; current active immigration law practice; extensive training experience with federal judges and law enforcement officers; recent service as judicial administrator overseeing immigration courts with 70,000+ cases under direct supervision and managing 20 judges across multiple jurisdictions.

**U.S. Department of Justice**

Executive Office for Immigration Review

*Office of the Chief Immigration Judge*

Chief Immigration Judge

*5107 Leesburg Pike, Suite 2500*
*Falls Church, Virginia 22041*

March 21, 2005

MEMORANDUM

TO: All Immigration Judges
All Court Administrators
All Judicial Law Clerks
All Immigration Court Staff

FROM: The Office of the Chief Immigration Judge

SUBJECT: Operating Policies and Procedures Memorandum 05-02:
Procedures For Issuing Recusal Orders In Immigration Proceedings

TABLE OF CONTENTS

I. INTRODUCTION........................................ 1
II. BACKGROUND ON RECUSAL........................................ 1
III. WHEN IS RECUSAL WARRANTED?........................................ 3
A. RELEVANT CASE LAW........................................ 4
B. OTHER CIRCUMSTANCES WHERE RECUSAL IS PERMITTED........................................ 5
C. BLANKET RECUSALS........................................ 6
IV. PROCEDURES FOR RECUSAL........................................ 7
A. PRIOR TO THE HEARING........................................ 7
B. DURING THE HEARING........................................ 7
V. CONCLUSION........................................ 7

## I. INTRODUCTION

This Operating Policies and Procedures Memorandum ("OPPM") sets forth procedures for immigration judges to follow when issuing recusal orders. It replaces my memorandum entitled "Recusal in Immigration Court Proceedings," dated July 18, 1997.

## II. BACKGROUND ON RECUSAL

Recusal is the process under which a judge is excused or disqualifies himself or herself from presiding over a case in which he or she may have an interest or may be unduly prejudiced. This obligation to recuse is not limited to those instances where a party makes a motion; rather,

it also places a burden on a judge to sua sponte identify those circumstances where recusal may be appropriate. Liteky v. U.S., 510 U.S. 540, 548 (1994). Title 28 United States Code § 455[1] codified this doctrine and states in pertinent part:

> § 455. Disqualifications of justice, judge or magistrate.
> (a) Any justice, judge or magistrate judge of the United States[2] shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . [3]

In the immigration context,[4] the regulations provide for withdrawal and substitution of

---

[1] This section of title 28 is not the only section relating to recusals; 28 U.S.C. § 144 also addresses the issue of judicial bias. Section 144, however, is an older section of the code which requires a judge to examine the issue of recusal upon a party's filing of an affidavit. Section 455 is not only broader in scope but is the more commonly used section. Moreover, it does not require a motion by a party to be invoked.

[2] Although this section does not specifically mention immigration judges, this section and its applicable case law offers strong guidance on the recusal issue. Moreover, it mirrors the judicial canons of the American Bar Association's Code of Judicial Conduct (see footnote 3), which do apply to immigration judges. Immigration judges are not required to comply with the American Bar Association's Code, but the Code reflects principles to which immigration judges should "aspire." See Ethics Manual For Members of the Board of Immigration Appeals, Immigration Judges, and Administrative Law Judges Employed by the Executive Office for Immigration Review, p. 4.

[3] This section parallels Canon 3(E)(1) of the American Bar Association's Code of Judicial Conduct which states:

E. Disqualification.
(1) A judge shall disqualify himself or herself in a proceedings in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of a disputed evidentiary facts concerning the proceeding; . . .

[4] Prior to the enactment of IIRIRA, section 242(b) of the INA mandated recusals in certain situations. This provision was eliminated by IIRIRA. Recusals are now only regulatory. Section 242(b) of the INA prior to its amendment read as follows:

> No special inquiry officer shall conduct a proceeding in any case under this section in which

immigration judges, and state, in part:

> The immigration judge assigned to conduct the hearing shall at any time withdraw if he or she deems himself or herself disqualified. 8 C.F.R. § 1240.1(b).

The Board of Immigration Appeals (BIA) has addressed the issue of recusal in Matter of Exame, 18 I&N Dec. 303 (BIA 1982). In Exame, the BIA recognized three instances that warrant recusal: (1) when the alien demonstrates that he was denied a constitutionally fair proceeding; (2) when the immigration judge has a personal bias stemming from an "extrajudicial" source; and (3) when the immigration judge's judicial conduct demonstrates "such pervasive bias and prejudice." Id. at 305 (quoting Davis v. Board of Sch. Comm'rs of Mobile County, 517 F.2d 1044 (5th Cir. 1975).

## III. WHEN IS RECUSAL WARRANTED?

Recusal is not a tool which parties and judges can arbitrarily invoke to rid themselves of unpleasant or difficult cases. Rather, recusal is mandated only in certain clearly delineated instances. Indeed, **judges have *an obligation not to recuse themselves*** in certain circumstances. *See* Laird v. Tatum, 409 U.S. 824, 837 (1972) (holding "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified") (and cases cited therein); Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995) ("Further, we are mindful that a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.") (and cases cited therein); United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986) ("A second policy is that a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation."); Martin-Trigona v. Lavien, 573 F. Supp. 1237, 1243 (D. Conn. 1983) ("There is an obligation on the part of a judge to decline to recuse himself for a 'relatively trivial reason.'"); Sexson v. Servaas, 830 F. Supp. 475, 482 (S.D. Ind. 1993) (finding "a judge's duty not to recuse when confronted with a motion that has little basis in reality, both factual and legal, is as strong as the duty to recuse"); *but see* United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989) (holding that § 455 eliminated the doctrine of "duty to sit").[5] This obligation is to prevent parties from using

---

he shall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions.

[5] When Congress amended § 455 in 1974 to create an objective standard for recusal, its intent was to "promote public confidence in the impartiality of the judicial process . . . ." H. R. Rep. No. 93-1453, 1974 at 6355. Congress, by clarifying § 455, attempted to remove the old "duty to sit" doctrine, a subjective test which required "a judge, faced with a close question on disqualification, was urged to resolve the issue in favor of a 'duty to sit.'" Id. Congress cautioned, however that "the new test [objective test] should not be used by judges to avoid sitting on difficult or controversial cases . . . Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the

recusal as an excuse to judge or forum shop, as well as to preserve the integrity of the judicial process. *See* Martin-Trigona, 573 F. Supp. at 1242 (claiming "the right to an impartial judge cannot be advanced so broadly as to permit the parties to engage in 'judge-shopping' under the guise of a motion to recuse . . . or to permit a litigant to disqualify without reasonable grounds a succession of judges for the apparent purpose of impeding the administration of justice") (*citing* United States v. Boffa, 513 F. Supp. 505, 508 (D. Del. 1981)); In re Parr, 13 B.R. 1010 (E.D.N.Y. 1981)); *see also* Greenough, *supra* at 1558 ("If this [unsubstantiated recusal] occurred, the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges."); *see also* Laird, *supra*; United States v. Kanahele, 951 F. Supp. 921, 925 (D. Haw. 1995), *dismissed in part, aff'd in part*, 103 F.3d 142 (1996).

**The test for determining whether recusal is an appropriate remedy is an objective one**. Under this standard, a judge should recuse him or herself when it would appear to a reasonable person, knowing all the relevant facts, that a judge's impartiality might reasonably be questioned. *See* Liteky v. U.S., *supra*; Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988); US v. Winston, 613 F.2d 221 (9th Cir. 1980); Davis, 517 F.2d at 1052. Moreover, the Supreme Court has found that prejudice or bias stemming from an "extrajudicial source," although not required for recusal, is significant and often determinative in establishing grounds for recusal. Liteky v. U.S., *supra*. As one court concisely put it, "the negative bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." U.S. v. Balistrieri, 779 F.2d 1191, 1201 (7th Cir. 1985), *cert. denied*, 477 U.S. 908 (1986).

## A. RELEVANT CASE LAW

Case law offers a wealth of guidance for determining when recusal is or is not warranted. The Seventh Circuit concluded that a motion to recuse was properly denied where the respondent claimed that the same immigration judge could not hear both the bond hearing and removal hearing. Flores-Leon v. INS, 272 F.3d 433, 440 (7th Cir. 2001). **Further, a judge should not recuse himself merely because a party sues or threatens to sue him**. Ronwin v. Arizona, 686 F.2d 692 (9th Cir. 1981), *rev'd on other grounds*, 466 U.S. 588 (1984); United States v. Grismore, 564 F.2d 929 (10th Cir. 1977); Kanahele, 951 F. Supp. at 925; United States v. Blohm, 579 F. Supp. 495 (S.D.N.Y. 1984); Martin-Trigona v. Lavien, 573 F. Supp. 1237 (1983). In addition, the **remoteness in time and circumstances of any events which could potentially bias a judge should also be considered.** *See* Balistrieri, *supra*, at 1200 (finding that events

---

transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." Id. Accordingly, **judges continue to have a duty not to disqualify themselves without a reasonable basis.**

taking place ten to twelve years earlier were too remote to meet the reasonable person standard); Kanahele, *supra* at 925 (rejecting a recusal request because of "remoteness and implausibility"). **Nor will a judge's cutting or hostile comments to an attorney regarding his or her skill mandate recusal**. Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 885 (9th Cir 1991); U.S. v. Tucker, 78 F.3d 1313 (8th Cir. 1996), *cert. denied*, 117 S.Ct. 76 (1996); *see also* Davis, *supra* at 1050 (rejecting a plaintiff's claim that the judge's bias against their attorney was imputed on to them). Other circumstances which courts have rejected as insufficient basis for recusal include: adverse rulings against a party; Martin-Trigona, 575 F. Supp. at 1242; a party's attorney is a former law clerk of the judge; Smith v. Pepsico, 434 F. Supp 524 (S.D. Fla. 1977); when a judge has pretrial knowledge of facts from earlier participation in the case; Winston, *supra*; when a judge has formulated an understanding or an opinion on a legal issue through his or her previous exposure to it; *See* Laird, *supra;* or when the media has made characterizations about the case or the judge. *See* Greenough, *supra*. For an excellent summary of factors that would not warrant recusal, *see* United States v. Cooley, 1 F.3d 985 (10th Cir. 1993), *cert. denied*, 515 U.S. 1104 (1995).

## B. OTHER CIRCUMSTANCES WHERE RECUSAL IS PERMITTED

Recusal is permitted where threats, accompanied by action, are so extreme and rise to such a level as to possibly endanger the judge's life. *See* Kanahele, *supra* at 925 (noting that murder threats and steps taken to murder a judge were sufficient to recuse a judge). Recusal is also permissible when the judge has a financial or fiduciary connection with one of the parties. Liljeberg, *supra*. It is also necessary when the parties have a familial relationship, but only to certain degrees. 28 U.S.C. § 455(b)(5). Indeed, the statute clearly outlines circumstances where disqualification is mandated. 28 U.S.C. § 455(b) specifically provides:

> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
> (5) He or his spouse, or a person within the third degree of

> relationship to either of them, or the spouse of such a person:
> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> (ii) Is acting as a lawyer in the proceeding;
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Thus, in these instances, a judge is obliged to disqualify him or herself regardless of the reasonable person test. *see* *id.*; *see also*, H.R. Rep. 93-1453, *supra* ("Subsection (b) of the amended statute sets forth specific situations or circumstances *when the judge must disqualify himself* . . . by setting specific standards, Congress can eliminate the uncertainty and ambiguity arising from the language in the existing statute and will have aided the judges in avoiding possible criticisms for failure to disqualify themselves.") (emphasis added).

Because recusals attack the essence of our legal system--the impartiality of a judge-- they are a serious matter. Indeed, judges faced with a possible recusal situation must go through an extensive analysis of the surrounding circumstances prior to issuing any decision on the matter. Moreover, **such decisions must be predicated on compelling evidence rather than mere allegations or conclusory facts**. Balistrieri, *supra* at 1220 ("Disqualification of a judge for actual bias or prejudice is a serious matter, and it should be required only when the bias or prejudice is proved by compelling evidence."); Sexson, *supra* at 477 ("the judge makes the disqualification decision considering a truthful and thorough examination of the relevant facts and circumstances, not merely those contentions and innuendos played out by counsel"); Taylor v. O'Grady, 888 F.2d 1189, 1201 (7th Cir. 1989) (holding that a judge's remarks were not "compelling evidence" and "too inconsequential to mandate disqualification").

## C. BLANKET RECUSALS

There have been circumstances when parties before the Court have requested blanket recusals of immigration judges. Blanket, or broad disqualifications of a judge should be carefully considered, since the compelling evidence standard dictates that judges examine and analyze each case *individually* to make a determination that disqualification is required. *See* In re Acker, 696 F. Supp. 591 (N.D. Ala. 1988) (rejecting a broad recusal order on all government cases and instead deciding that "case-by-case" analysis was more consistent with applicable case law); El Fenix de Puerto Rico v. The M/Y Johanny, 36 F.3d 136 (5th Cir. 1994) (remanding the case because recusals require a sufficient factual basis). Indeed, broad recusals should only be considered in those circumstances in which the statute mandates automatic disqualification. *see* 28 U.S.C. § 455(b).

## IV. PROCEDURES FOR RECUSAL

A judge has an obligation not to recuse himself or herself based upon mere allegations or threats. Therefore, all requests for recusal shall be made on the record, or filed in writing, and supported by specific reasons why recusal is warranted.

### A. PRIOR TO THE HEARING

If, at any time prior to the hearing, an immigration judge issues a decision on a recusal matter, he or she must render it in writing and serve it upon the parties to ensure that the parties have sufficient notice that their hearing will be rescheduled with another immigration judge. The written decision must contain a well-reasoned opinion explaining the circumstances and legal reasoning behind either the grant or the denial of the recusal. Moreover, the judge must issue a written decision in every case, regardless if the recusal was sua sponte or predicated upon a motion by one of the parties. Simple form or blanket orders will not suffice unless the immigration judge had a role in the case as a DHS attorney or private attorney. In that case, the order shall simply state that the immigration judge had a role in the case as a DHS attorney or private attorney.

### B. DURING THE HEARING

There may be circumstances where the grounds for a recusal may not become apparent until the actual hearing. In these situations, the judge must go on the record and issue an oral decision describing the reasons behind the grant or denial of the recusal motion. The decision must contain a well-reasoned opinion explaining the circumstances and legal reasoning behind either the grant or the denial of the recusal.

## V. CONCLUSION

Recusals are a serious matter and judges, including immigration judges, should not recuse themselves from cases without first thoroughly analyzing the circumstances behind such a recusal. Moreover, since a judge has an equally important obligation not to recuse himself or herself arbitrarily, his or her recusal should be based upon compelling evidence indicating that his or her judgment would be compromised. This process is vital to ensure that parties are accorded a hearing with an impartial judge without encouraging the use of recusal as a method to forum or judge "shop."

If you have any questions regarding this OPPM, please contact Brenda O'Malley, Counsel to the Chief Immigration Judge, at (703) 305-1247, or your Assistant Chief Immigration Judge.

Michael J. Creppy
Chief Immigration Judge