Cite as 30 I&N Dec. 84 (BIA 2026) Interim Decision #4250

# Matter of M-K-, Respondent

*Decided September 25, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Reopening is unwarranted because the respondent's claim of a lack of due process is speculative, based on a series of false assumptions and fallacious reasoning, and wholly unsupported by the actual evidence in the record.

FOR THE RESPONDENT: Marc Van Der Hout, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Numa Metoyer, Associate Regional Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; HUNSUCKER and GEMOETS, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The respondent is a native of Syria and a citizen of Algeria. This matter was last before the Board on April 15, 2026, when we designated as precedent an April 9, 2026, decision dismissing the respondent's appeal from a September 12, 2025, decision in which an Immigration Judge found him removable, denied his applications for relief and protection from removal, and denied his motion to remand. *Matter of M-K-*, 29 I&N Dec. 556, 559–69 (BIA 2026). Presently before the Board is a motion to reopen filed by the respondent,[1] which the Department of Homeland Security ("DHS") opposes. The motion will be denied.[2]

A motion to reopen for the purpose of presenting additional evidence will only be granted if the evidence was not previously available and would likely change the result in the case. 8 C.F.R. § 1003.2(c)(1) (2026); *see also Matter of L-A-C-*, 26 I&N Dec. 516, 526 (BIA 2015). A respondent seeking reopening must also establish prima facie eligibility for the underlying relief sought. *See INS v. Abudu*, 485 U.S. 94, 104 (1988) ("There are at least three independent grounds on which the BIA may deny a motion to reopen. First,

---

[1] The respondent's motion to exceed the page limitation is granted.

[2] We have denied the respondent's motion to reconsider in a separate, unpublished decision.

it may hold that the movant has not established a prima facie case for the underlying substantive relief sought."); *see also Parada-Orellana v. Garland*, 21 F.4th 887, 893 (5th Cir. 2022) (citing *Abudu*); *Matter of Chen*, 28 I&N Dec. 676, 681–82 (BIA 2023) (denying the respondent's motion to reopen because she did not establish prima facie eligibility for the relief sought). Prima facie eligibility is shown when there is a reasonable likelihood that the statutory requirements for the relief sought have been satisfied and relief will be granted in the exercise of discretion. *Matter of L-O-G-*, 21 I&N Dec. 413, 419 (BIA 1996).

In his motion to reopen, the respondent does not seek relief from removal. Rather, he requests termination of the proceedings or a remand based on his assertion that he was denied a fair hearing (Respondent's Mot. at 25–42). Reopening is unwarranted because the evidence presented does not establish a reasonable likelihood that this occurred.

Reduced to its essence, the respondent's argument is both wholly unsupported by the actual evidence—as opposed to conspiracy theories and innuendo—and a complete non sequitur. The respondent argues that: (1) because multiple Appellate Immigration Judges may have recused from voting on whether to *publish* the Board's initial decision (but were not involved in the outcome of the panel decision itself); (2) those recusals necessarily occurred for one—and only one—reason (as opposed to the myriad of possible reasons for recusal); (3) that one reason was that the recused Appellate Immigration Judges previously pressured or influenced the presiding Immigration Judge in the respondent's case; and (4) because of that improper influence, the respondent is entitled to a new hearing or the termination of his proceedings.

The first three points are without foundation and do not logically follow, rendering the fourth point completely unsupported. First, deciding the merits of an appeal is a completely separate process from deciding to publish a precedential decision. *See generally* 8 C.F.R. 1003.1(g)(3) (2026). Further, by definition, a recused Appellate Immigration Judge would not sit on the panel that decided the outcome of the respondent's appeal. Thus, the recusal of Appellate Immigration Judges in deciding whether to publish the decision has no bearing on the outcome or the merits of the case, especially in the respondent's case when some of the alleged recusals occurred after the decision in his case was issued on April 9, 2026.

Second, even if the recusals had occurred at the merits review stage, the recusals would not reflect anything other than a determination that an Appellate Immigration Judge felt it was inappropriate for him or her to

consider the case for some reason. Recusals may occur for many reasons; they are frequently fact-bound and individualized determinations, and reasonable jurists may differ on whether recusal is warranted even when presented with the same set of facts. *Cf. United States v. Medoff*, 159 F.4th 107, 124 (1st Cir. 2025) ("Given that reasonable minds may differ on this matter, we review a court's decision not to recuse under the highly deferential abuse-of-discretion standard.").

Third, apart from financial interests (which are generally not an issue in removal proceedings) or familial relationships, the most common reasons for recusal relate to prior involvement in a particular case. Contrary to the respondent's (and his affiants') singular assumption, however, there were multiple avenues for prior involvement by agency employees in the respondent's case *other* than pressuring the presiding Immigration Judge. For example, the respondent has had parallel litigation in federal court against the Department of Justice regarding his petition for habeas corpus since March 2025, in which different Executive Office for Immigration Review ("EOIR") employees may have worked with the Civil Division in defending. Again, such involvement may or may not have mandated recusal from considering whether to publish the decision in the respondent's case, but it certainly would not reflect any pressure or improper behavior toward the presiding Immigration Judge.[3] In short, the respondent's argument reflects outcome-based abductive reasoning—*i.e.*, the Board's outcome was not favorable to him, so something improper must have occurred—but it is both based on fallacious, illogical reasoning and wholly unsupported by the record.

The respondent avers that at least three Appellate Immigration Judges improperly influenced the Immigration Judge's decision-making based on their recusals from the case and that a "pattern of unusual decisions" by the Immigration Judge and the Board—especially the expeditious manner in which the case was adjudicated—violated his right to an impartial hearing before a neutral adjudicator (Respondent's Mot. at 19–22, 27, Exhs. A–D). *See* 8 C.F.R. § 1003.10(b) (recognizing Immigration Judges' independent judgment and discretion in deciding the individual cases before them). Moreover, the respondent asserts that the Board as currently constituted is incapable of providing due process not only in this case but to respondents in general (Respondent's Mot. at 30–39). This speculative claim is based on

---

[3] The respondent's own evidence shows significant limitations on the basis for recusal. Affidavit of Dana Leigh Marks § 13 ("In my experience, general legal discussions—such as a discussion about general legal principles or novel legal questions in the abstract—would not be a basis for recusal. Having a personal relationship with the [Immigration Judge] would also not be a basis for recusal.").

a series of false assumptions and demonstrates a fundamental misunderstanding of Board practice and procedure. It is inappropriate and irresponsible—and potentially a violation of standards of professional responsibility, *see, e.g.*, Model Rules of Prof'l Conduct R. 8.2(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer[.]") (1983); Cal. Rules of Prof'l Conduct R. 8.2(a) ("A lawyer shall not make a statement of fact that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge or judicial officer[.]") (2018); 8 C.F.R. § 1003.102(g), (j), (n) (2026)—for an attorney to make such bald assertions based on the evidence presented in this motion.

As the primary new evidence in support of the motion, the respondent presents a May 8, 2026, New York Times article ("Article"), a May 13, 2026, affidavit from Andrea Sáenz ("Sáenz Affidavit"), a May 13, 2026, affidavit from Dana Leigh Marks ("Marks Affidavit"), and a May 14, 2026, affidavit from Ryan R. Wood. In general, a domestic media article consisting primarily of opinions with minimal (and anonymously-sourced) facts will almost never be sufficient evidence to warrant reopening. Nearly every well-known domestic media outlet operates with a particular ideological valence which must be accounted for in assessing the persuasiveness of its reporting and its evidentiary weight. *See, e.g.*, *AllSides Media Bias Chart*, AllSides, https://www.allsides.com/media-bias/media-bias-chart (last visited Sept. 25, 2026); *cf. Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness . . . is always relevant as discrediting the witness and affecting the weight of his testimony.") (citation modified); *see also, e.g.*, *John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 611 (7th Cir. 2021) (recognizing that some media outlets are traditionally viewed as conservative leaning, such as the Washington Times, Wall Street Journal, Fox News, and Washington Examiner, whereas others are viewed as liberal leaning, such as the Capitol Times, New York Times, and Huffington Post). Media coverage of judicial decisions warrants particular skepticism because it is often focused on perceived nonlegal issues rather than the applicable law and legal reasoning actually at issue before the court. *See, e.g.*, Barry Sullivan and Christina Camody Tilley, *Supreme Court Journalism: From Law to Spectacle?*, 77 Wash. & Lee L. Rev. 343, 343–344, 437–442 (2020) (concluding that contemporary media coverage of the Supreme Court by newspapers including the New York Times focuses primarily on the justices' presumed political and policy preferences rather than the legal issues they confront in the case before them, which can undermine public confidence in the Court as an institution). To be sure, "[a] publication can be accurate but still biased." *AllSides Media Bias Chart*, *supra*. But a publication that is (1)

based on anonymous factual sourcing[4] supplemented by opinions of only individuals whose biases are aligned with that of the narrative of the story and who lack any firsthand knowledge of the facts at issue, (2) contains disputed facts, and (3) is clearly biased against the agency and in favor of the subject of the case warrants minimal, if any, weight, and is unlikely to be persuasive enough to warrant reopening. Further, taking action based on such an article would likely violate an Appellate Immigration Judge's ethical and professional duty to act in a neutral and detached manner. *See* Ethics and Professionalism Guide for Members of the Board of Immigration Appeals, sec. VIII (May 4, 2011); https://www.justice.gov/d9/pages/attachments/2017/08/24/bia_ethics_and_professionalism_guide_for_board_members.pdf ("A Board Member should not be swayed by partisan interests or *public clamor*.") (emphasis added).

The respondent's three supporting affidavits fare no better in supporting his motion. All three affiants ground their comments in unfounded assumptions and innuendo, none has any firsthand knowledge of the Board's deliberations or procedures in this case, and none has even been employed by EOIR for at least a year. All three based their opinions on information provided by the respondent without any independent verification of the respondent's assertions or suppositions and without any exposure to facts contradicting the respondent's assertions. The affiants do not even acknowledge the possibility of alternative, innocuous conclusions. As a result, all three affidavits suffer from a conformation bias that further undermines the utility of their statements. In sum, neither the media publication nor the affidavits, considered individually and cumulatively, provide credible, probative new evidence sufficient to warrant reopening.

The Board dismissed the respondent's appeal and denied his motion to remand in a detailed, three-Appellate Immigration Judge panel decision on April 9, 2026. The en banc Board then voted on April 15, 2026, to designate the decision as precedent under 8 C.F.R. § 1003.1(g)(3). *Matter of M-K-*, 29 I&N Dec. at 556 n.1. The fact that some Appellate Immigration Judges may have recused themselves from the case ipso facto shows that they took no part in the case at the Board. And, as discussed above, there is no credible evidence to connect the recusals to any improper pressure on the presiding Immigration Judge.

---

[4] We also note that disclosing information about the respondent in the manner here implicates the Privacy Act, which can include criminal penalties. *See* 5 U.S.C. § 552a(i)(1). However, that is beyond the scope of this decision.

The respondent contends that the Immigration Judge's denial of his motion to change venue after his release from custody establishes interference by the Board in the Immigration Judge's decision-making (Respondent's Mot. at 21–22). However, it is DHS that determines when and whether to initiate removal proceedings through service of the Form I-862, Notice to Appear, which DHS did in March of 2025 in the LaSalle Immigration Court in Jena, Louisiana, where the respondent was detained (Exh. 1; Respondent's Mot. at 5–6). *See Matter of Vizcaino Aybar*, 29 I&N Dec. 736, 738 (BIA 2026) (holding that venue is where the respondent is currently located); *Matter of W-Y-U-*, 27 I&N Dec. 17, 19 (BIA 2017) (explaining that prosecutorial discretion is a matter within the exclusive jurisdiction of DHS and the Board lacks the authority to review DHS' exercise of prosecutorial discretion).

The Immigration Judge did not err in denying the motion for a change of venue. "An Immigration Judge may, for good cause, order a change of venue upon motion by one of the parties[.]" *Matter of I-B-M-S-*, 29 I&N Dec. 628, 629 (BIA 2026) (citing 8 C.F.R. § 1003.20(b) (2026)). In assessing whether there is good cause, Immigration Judges "balance relevant factors including administrative convenience, expeditious treatment of the case, the location of witnesses, cost of transporting witnesses or evidence to a new location, factors commonly associated with the alien's place of residence, and the position of the opposing party." *Id.* (citing *Matter of Rahman*, 20 I&N Dec. 480, 482–84 (BIA 1992)). No single factor is dispositive and "the significance of each factor will vary depending on the facts and circumstances of a given case." *Id.* at 630. After the respondent appeared before the Immigration Judge and she made substantive rulings, the respondent was released from detention in June 2025 (Respondent's Mot. at 7–10). Where, as was the case when the respondent filed his motion to change venue, the proceedings have significantly progressed, the factor of expeditious treatment of the case increases in importance. *Id.* at 630. The Immigration Judge properly applied these standards in finding that the respondent failed to establish good cause for a change of venue, and we reject the assertion that the Article and affidavits show that her decision "was motived by EOIR and the federal government's animus towards [him] and their desire to keep this case with an [Immigration Judge] who would issue a pre-determined, pretextual, and pre-approved removal order." (Respondent's Mot. at 21–22, Exhs. A–D). These claims are inaccurate and wholly unsupported by the evidence presented.

There also is no basis for the respondent's assertion that the Board impeded the Immigration Judge's independent judgment and discretion in her decision by determining that the respondent was ineligible for a waiver

under section 237(a)(1)(H) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(H) (2024) (Respondent's Mot. at 22, Exh. C). The respondent bases this claim on the Immigration Judge stating in her order that she disagreed with *Matter of Agour*, 26 I&N Dec. 566 (BIA 2015), and concluding that the phrase "at the time of admission" in section 237(a)(1)(H) of the INA, 8 U.S.C. § 1227(a)(1)(H), refers to an alien's lawful entry into the United States after inspection and authorization by an immigration officer, and thus fraud and misrepresentations occurring at the time of adjustment of status cannot be waived under section 237(a)(1)(H). As an initial matter, it is in no way unprecedented for an Immigration Judge to issue an order that expresses disagreement with a Board decision. *See, e.g.*, *In re Miles Osbourne*, 2004 WL 2952116, at *3 (BIA Nov. 16, 2004) ("With respect to the aggravated felony charge, the Immigration Judge expressed disagreement with this Board's decision in *Matter of Rodriguez-Ruiz*[, 22 I&N Dec. 1378 (BIA 2000).]"); *see also, e.g.*, *Matter of Garcia-Flores*, 29 I&N Dec. 230, 231 (BIA 2025) (concluding that the Immigration Judge acknowledged but failed to apply *Matter of Mendez*, 21 I&N Dec. 296, 304 (BIA 1996)). Further, the Immigration Judge also ruled in the alternative that the respondent did not merit the waiver in discretion. The Board affirmed the alternative determination on discretion but did *not* affirm the Immigration Judge's initial determination that the respondent was ineligible for the waiver. As noted by the respondent, the Board overruled *Matter of Agour* in *Matter of Forjoe*, 29 I&N Dec. 463, 466–71 (BIA 2026), while his appeal was pending with the Board, but the new decision was of no significance to the respondent's case because it was expressly made prospective in nature only to cases that arose after the new decision's effective date. *Matter of M-K-*, 29 I&N Dec. at 563 (citing *Matter of Forjoe*, 29 I&N Dec. at 472). This in no way supports the respondent's contention that he was denied a fair hearing.

The respondent's assertion that the Sáenz and Marks Affidavits establish that the Board's handling of his case show that he was denied a full and fair hearing is patently meritless (Respondent's Mot. at 22–23; Exhs. B–C). The regulations provide that the Chief Appellate Immigration Judge of the Board "shall have authority to . . . set priorities or time frames for the resolution of cases, . . . regulate the assignment of [Appellate Immigration Judges] to cases, and otherwise to manage the docket of matters to be decided by the Board." 8 C.F.R. § 1003.1(a)(2)(i)(C) (2026). Pursuant to this authority, the Board has long prioritized different types of cases, including those involving detained aliens, collateral federal litigation, and cases of significant public

interest.[5] In this case, Secretary of State Marco Rubio determined that the respondent is removable under section 237(a)(4)(C)(i) of the INA, 8 U.S.C. § 1227(a)(4)(C)(i) (2024), because his presence in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling United States foreign policy interest based on his participation and role "in antisemitic protests and disruptive activities which fosters a hostile environment for Jewish students in the United States." (Exh. 7). *Matter of M-K-*, 29 I&N Dec. at 557, 565.[6] Even the respondent recognizes in his motion that his case is "one of the most high-profile immigration cases in the country." (Respondent's Mot. at 30). Moreover, the respondent's own evidence indicates that the expeditious handling of a Board appeal is not unique to his case. *See* Article (quoting the former Director of the Justice Department's Office of Immigration Litigation in saying that "the speed of the decision [in the respondent's case] . . . [was] not necessarily a signal of something nefarious" and that "[d]uring previous administrations, . . . senior officials would occasionally fast-track cases that presented pressing legal issues").[7] The Board therefore appropriately prioritized this case under the regulations as a matter affecting the public. The Chief Appellate Immigration Judge also adjudicates cases and properly participated on the panel in this matter. *See* 8 C.F.R. § 1003.1(a)(2)(i)(C), (E).

The fact that a case is expedited does not mean that the judge or judges involved in deciding it prejudged the case or were biased against either party. It is well established that "Immigration Judges and the Board have a duty to promptly and fairly bring removal proceedings to a close." *Matter of B-N-K-*, 29 I&N Dec. 96, 100 (BIA 2025); *see also Matter of Quintero*, 18 I&N

---

[5] The Board may affirm an Immigration Judge in an unpublished decision by a single Appellate Immigration Judge under 8 C.F.R. § 1003.1(e)(3) (2026). However, one of the regulatory reasons for a case to be decided by a panel of three is if the case is "of major national import." 8 C.F.R. § 1003.1(e)(6)(iv) (2026).

[6] While we recognize the declaratory judgment issued in *Stanford Daily Pub. Corp. v. Rubio* (5:25-cv-06618), it is not an injunction and thus does not vitiate the removal charge. *See Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987) ("An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action."). The declaratory judgment is also not binding on the United States Court of Appeals for the Fifth Circuit, which is considering the respondent's petition for review.

[7] The Saenz Affidavit incorrectly implies that the only basis for prioritizing cases is when the alien is detained.

Dec. 348, 350 (BIA 1982) (observing that Immigration Judges have a "duty" to resolve immigration proceedings "in an expeditious manner"); *accord* 8 C.F.R. § 1003.1(d)(1) (2026) ("The Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations."). This furthers the "important public interest in the finality of immigration proceedings." *Matter of W-Y-U-*, 27 I&N Dec. at 19. There is no correlation between the length of time in which the Immigration Court or the Board decided the respondent's case and the accuracy and fairness of the decision reached. The Immigration Judge's decision and the record in this case also remained pending while the appellate briefing was delayed through agreement of the parties.

There is no basis for the claim that the panel in this case was predetermined. Additionally, for a case to be designated as precedent, a majority of the members of the Board must vote in favor of publication, even when, as in this case, the decision is published as a three-member panel decision. Any Appellate Immigration Judges who recused from the case also did not reduce the necessity for a majority of the 15 permanent members to have voted for publication. The fact that the majority of the permanent Board voted to publish this case is a further indication that the respondent received due process. We also note that it is not unprecedented for the Board to publish a decision after it has been issued as an unpublished one. *See, e.g.*, *Matter of Z-R-C-N-*, 29 I&N Dec. 523, 523 n.1 (BIA 2026); *Matter of Alvarado*, 26 I&N Dec. 895, 897 n.4 (BIA 2016); *Matter of C-A-*, 23 I&N Dec. 951, 951 n.1 (BIA 2006).

The respondent's contention that the substantive rulings in *Matter of M-K-* establish a lack of fairness in these proceedings further lacks merit because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (Respondent's Mot. at 23–25). *Liteky v. United States*, 510 U.S. 540, 555 (1994). The respondent's disagreement with the Board's ruling regarding the import of the preliminary injunction issued in *Khalil v. Trump*, 786 F.Supp.3d 871 (D.N.J. 2025), following its vacatur in *Khalil v. President*, 164 F.4th 259, 281 (3d Cir. 2026), does not establish bias. *See Matter of Exame*, 18 I&N Dec. 303, 306 (BIA 1982) (recognizing that an alien is not deprived of a fair hearing simply because the adjudicator has a different view about a question of law).[8] The respondent provides no

[8] In fact, the Third Circuit has since denied the respondent's petition for rehearing en banc. *Khalil v. President*, 176 F.4th 295 (3d Cir. 2026) (mem.). With his motion to reconsider, the respondent presented evidence that on May 26, 2026, the court granted his motion to stay the issuance of the court's mandate pending his filing of a petition for certiorari with the United States Supreme Court. The respondent has filed a petition for certiorari.

evidentiary support for his unfounded claim that, in *Matter of M-K-*, the Board "rushed his case through as quickly as possible with the goal of issuing a pre-determined final order of removal (and affirming the [Immigration Judge's] pre-determined removal order issued below) as quickly as possible." (Respondent's Mot. at 25). There is no evidence that the Immigration Judge below or the Appellate Immigration Judges on appeal involved in the case were biased, rushed, or pressured to decide the case in a certain manner.

The respondent also cites various exhibits in support of his contention that he did not receive a fair hearing because the Immigration Courts and the Board are currently incapable of providing all respondents a fair hearing (Respondent's Mot. at 30–39). In particular, the respondent avers that his evidence shows that widescale institutional bias may be inferred from: (1) hiring practices of the Office of the Chief Immigration Judge ("OCIJ"), (2) hiring practices of the Board; (3) EOIR's hiring of "deportation judges;" (4) EOIR policy directives; and (5) EOIR actions inconsistent with district court rulings. Many of the respondent's exhibits concern matters publicly known before the issuance of the Immigration Judge's September 12, 2025, decision and/or the Board's April 9, 2026, decision (Respondent's Mot. at 31–32, Exhs. O, S–T, V–Z, AA, CC–MM, OO–RR, TT–WW). As an initial matter, we deny the respondent's motion to reopen to the extent it is based on previously available evidence. *See* 8 C.F.R. § 1003.2(c)(1); *see also Matter of L-A-C-*, 26 I&N Dec. at 526. Furthermore, the respondent's evidence fails to support his meritless claims for various reasons.

First, statements of selected former Immigration Judges who have made disparaging comments about the Immigration Court system to media outlets do not establish systemic bias or unfairness (Respondent's Mot. at 31–34, Exhs. T, V–Z, TT–VV). The respondent's observation that Immigration Judges are career attorneys who report to the Attorney General, an appointee of the Executive Branch, likewise does not establish that Immigration Judges lack independence in their decision-making (Respondent's Mot. at 32–33). Immigration Judges have long been attorneys appointed by the Attorney General as administrative judges within OCIJ to conduct specified classes of proceedings. *See* INA § 101(b)(4), 8 U.S.C. § 1101(b)(4) (2024); 8 C.F.R. § 1003.10(a) (2026). Moreover, the regulations have long expressly provided that Immigration Judges exercise "independent judgment and discretion" in their adjudication of cases. 8 C.F.R. §1003.10(b) (2026); *see also* 8 C.F.R. § 1003.0(c). They have a duty to follow governing law—including the INA, its implementing regulations, and binding precedential decisions—when adjudicating the merits of a particular case, without giving preferential treatment to any organization or individual or being swayed by

partisan interests or public clamor. *See* Ethics and Professionalism Guide for Immigration Judges, Secs. V, VIII (Jan. 2011); https://www.justice.gov/sites/default/files/eoir/legacy/2013/05/23/EthicsandProfessionalismGuideforIJs.pdf. Being required to apply binding authority does not mean that an adjudicator lacks independence or has been denied the discretion afforded by the INA or the regulations.

We further disagree that a recent statement by the then-Acting Attorney General indicates a lack of judicial independence (Respondent's Mot. at 34, Exh. BB). The requirements that Immigration Judges apply binding precedent, regardless of their personal views, and efficiently process cases do not mean that they have been denied independence. Indeed, the respondent's own evidence notes that Immigration Judges are required to apply binding precedent. And, Immigration Judges who consistently fail to apply binding precedent violate their ethical and professional responsibility duties and may potentially face removal from their positions due to either incompetence (if the failure is due to ignorance) or bias or lack of impartiality (if the failure is intentional in order to benefit one party). *See* Ethics and Professionalism Guide for Immigration Judges at sec. IV ("An Immigration Judge should be faithful to the law and maintain professional competence in it."), sec. V ("An Immigration Judge shall act impartially and shall not give preferential treatment to any organization or individual when adjudicating the merits of a particular case."); *see also* 5 C.F.R. § 2635.101(b)(8).

The respondent's assertion that recent regulatory reorganization of the Board establishes the impossibility of a fair hearing is similarly unsupported (Respondent's Mot. at 34–35). EOIR published an interim final rule amending the regulations governing the organization of the Board reducing its size from 28 to 15 members to "increase the consistency of Board decisions and facilitate an efficient en banc process, thereby improving the quantity and value of Board precedents." Reducing the Size of the Board of Immigration Appeals, 90 Fed. Reg. 15525-01, 15527 (Apr. 14, 2025). Published decisions increased significantly after the reorganization, from 28 in FY2025 to 73 in FY2026, even excluding cases designated for publication by the Attorney General. This shows achievement of the regulatory goal of increased efficiency, not an interference in judges' independence. Further, there is no logical correlation between a reduction in the overall membership of the Board and the independence of its members, particularly when that independence is enshrined in regulation, 8 C.F.R. 1003.1(d)(1)(ii), and buttressed by Supreme Court precedent. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954) ("In unequivocal terms the regulations delegate to the Board discretionary authority as broad as the statute confers on the Attorney General . . . . And if the word 'discretion'

means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience. This applies with equal force to the Board and the Attorney General.").

Moreover, the Appellate Immigration Judges who were released from their position were released in accordance with Reduction in Force ("RIF") regulations in an exercise of the Attorney General's Article II Constitutional authority, which are based on the inverse order of retention standing. *See* 5 C.F.R. § 351.601(a) (2025) ("Each agency must select competing employees for release from a competitive level . . . under this part in the inverse order of retention standing, beginning with the employee with the lowest retention standing on the retention register."); 5 C.F.R. § 351.502(a) (2025) (explaining that competing employees are classified in the retention register on the basis of their tenure of employment, veteran preference, length of service, and performance in descending order). A RIF, almost by definition, generally affects employees in reverse order of tenure. That effect, however, reflects a function of the RIF regulations themselves, rather than any sort of targeting by the agency.

We further reject the respondent's assertion that the outcomes of certain precedential decisions indicate bias (Respondent's Mot. at 35). The Board exercises "independent judgment and discretion" in adjudicating cases, precedential or otherwise. 8 C.F.R. § 1003.1(d)(1)(ii). This necessitates interpretation of governing law based on the record presented without affording preferential treatment to either party or consideration of outside influences. *See* Ethics and Professionalism Guide for Members of the Board of Immigration Appeals, at secs. V, VIII. The respondent's disagreement with precedential rulings does not establish error or bias. *See Liteky*, 510 U.S. at 555.

Further, the respondent's assertion that no fair adjudication by the Board is possible is unsupported by his own evidence, as a March 23, 2026, article provides that 10.31% of aliens received favorable appellate outcomes during the covered period (Exh. WW at 1629). Even if we assume for the sake of argument the reliability of the underlying methodology behind the respondent's evidence that he says shows the Board is ruling more favorably to the Government than in the past, that claim does not establish bias. Instead, it may be the result of the Board being committed to following the

language of the INA and the applicable regulations rather than acting as a court of equity or otherwise circumventing the law in favor of one party.[9]

The respondent also has not shown that Immigration Judge hiring practices evince institutional bias in EOIR (Respondent's Mot. at 35–37). The respondent takes issue with a final rule aligning "the regulatory requirements for candidates for Temporary Immigration Judge ("TIJ") appointments to mirror the regulatory requirements for permanent Immigration Judge ("IJ") appointments, thus allowing the Attorney General and Director of EOIR to select TIJs from a larger pool of well-qualified candidates." Designation of Temporary Immigration Judges, 90 Fed. Reg. 41883, 41883 (Aug. 28, 2025). A regulation expanding the pool of applicants to augment the efficiency of immigration adjudications does not establish bias in those adjudications. The evidence presented does not establish that applicants are subject to anything less than an open, competitive, and merit-based hiring process (Respondent's Mot. at 36, Exhs. W, GG–HH).[10]

In addition, the respondent has not shown that memoranda issued by the Acting Director of EOIR establish bias (Respondent's Mot. at 37–38). By regulation, the Director is granted the authority to "[i]ssue operational instructions and policy" and "[d]irect the conduct of all EOIR employees to ensure the efficient disposition of all pending cases." 8 C.F.R. § 1003.0(b)(1)(i)–(ii) (2026). The respondent's evidence does not establish that the Acting Director exceeded her authority and improperly issued the noted memoranda (Respondent's Mot. at 38, Exh. NN). Furthermore, the memoranda explicitly state that they are not to "be construed as mandating a particular outcome in any specific case." (Respondent's Mot. at 38,

---

[9] The Board notes that as of March 31, 2026, the United States Court of Appeals reversal rate for Administrative Agency Appeals—most of which are petitions for review of Board cases—was only 5.1%. *See* United States Courts, Caseload Statistics Data Tables, Table B-5, U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending March 31, 2026, https://www.uscourts.gov/data-news/data-tables/2026/03/31/federal-judicial-caseload-statistics/b-5. Only aliens are authorized to file petitions for review of Board decisions, so only Board decisions adverse to an alien are considered by the appellate courts. Contrary to the respondent's meritless accusations, the relatively low appellate court reversal rate indicates that the Board's decisions are, in the main, generally legally correct. In other words, for the respondent's theory to carry any weight, both the Board *and* the courts of appeals would have to be biased against aliens, and there is no evidence of that.

[10] Moreover, because no TIJ presided over the respondent's case, his claims about their appointment process are irrelevant to his appeal.

Exhs. OO–RR). Another memorandum also reaffirms the independence and impartiality of EOIR adjudicators. EOIR Policy Memorandum 25-42, *Adjudicator Independence and Impartiality* (Aug. 22, 2025).[11]

Finally, the assertion that the Board is defying federal court orders is without merit. Some of the orders the respondent cites are District Court orders citing *DHS* noncompliance, over which of course the Board or EOIR in general has absolutely no control (Respondent's Mot. at 38–39). The respondent was not a party to the United States District Court decisions cited in his motion (*id.*). The Board complies with any District Court order where a respondent is a party that has not been disturbed on appeal.

For all these reasons, we deny the motion to reopen. *See* 8 C.F.R. § 1003.2(c)(1); *Matter of L-O-G-*, 21 I&N Dec. at 419; *Matter of L-A-C-*, 26 I&N Dec. at 526. Given the respondent's failure to show a reasonable possibility that he was denied a fair hearing, we further deny his request to remand the record to permit him to conduct discovery (Respondent's Mot. at 39–40).[12] We also reject the respondent's assertion that he is entitled to a new hearing because, contrary to his claim, he has not demonstrated that the agency violated its governing regulations and created an appearance of bias (Respondent's Mot. at 40–41). Most—if not all—of the respondent's arguments are meritless and raise questions as to whether they have been brought in good faith. We unequivocally reject his baseless contentions that there was any inappropriate influence on the adjudication of his case, and we emphasize that the outcome of his case was determined based on nothing other than the applicable law and the record before us.

The respondent has filed a petition for review of our April 9, 2026, decision with the United States Court of Appeals for the Fifth Circuit. The parties are ordered to inform the Fifth Circuit of our decision in this matter.

Accordingly, the following order is entered.

---

[11] The respondent's assertions on this point are simply baseless.

[12] Additionally, we previously rejected the respondent's argument that the Immigration Judge erroneously denied his motion for discovery because "[a]liens in removal proceedings are not entitled to conduct discovery directed towards the records, officers, agents, or employees of DHS, the Department of Justice, or the Department of State[,]" the respondent failed to indicate why he sought a subpoena under 8 C.F.R. § 1003.35 (2026), and he did not show prejudice. *Matter of M-K-*, 29 I&N Dec. at 562 (citing 8 C.F.R. § 1208.12(b) (2020) and *Matter of Benitez*, 19 I&N Dec. 173, 174 (BIA 1984)). The instant motion to remand for discovery is thus legally unsound.

**ORDER:** The motion to reopen is denied.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the INA, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).